TENNESSEE COACH CO. v. YOUNG.—80 S. W. (2d) 107.

Middle Section.  September 29, 1934.

Petition for Certiorari denied by Supreme Court, March 9, 1935.

W. M. Fuqua and Wm. D. Dodson, both of Nashville, for plaintiff in error Coach Co.

Walker & Hooker, of Nashville, and Malcolm C. Hill, of Sparta, for defendant in error Young.

CROWNOVER, J. This was an action for damages for personal injuries sustained by Dr. Young while riding as a passenger for hire in a bus owned by defendant Coach Company, as a result of the bus' skidding and overturning on the highway.

Defendant pleaded not guilty.

The case was tried by the judge and a jury. At the conclusion of all the evidence defendant moved for a directed verdict on the grounds that there was no material evidence to support a verdict and no negligence shown on the part of defendant, which motion was overruled. The jury returned a verdict of $5,000 in favor of plaintiff.

Motion for a new trial having been overruled, defendant appealed in error to this court and has assigned errors, which are, in substance, as follows:

(1) There was no evidence to support the verdict and no evidence showing negligence on the part of defendant Coach Company; therefore the court erred in refusing to direct a verdict for defendant.

(2) The court erred in overruling defendant's motion for a mistrial, based on the introduction by plaintiff of testimony showing compromise and settlement of certain witnesses' claims against defendant.

(3) The court erred in declining to charge defendant's theory of the case, the same being special request No. 1, which stated, in part, "that while so operating said bus under said circumstances, there suddenly appeared on the left shoulder of the road a mule, in about twenty or thirty feet in front of the bus, which mule was running across the road in front of the path of the bus, and which mule had not been seen by the driver of the bus and could not have been seen by the driver of the bus and could not have been seen by the exercise of due and proper care before that time, the said driver believing that the bus would strike the mule and cause a wreck, with probable injuries to the passengers, and in an effort to prevent such an accident, said driver of the bus cut the bus slightly to the right and applied his brakes and avoided striking the mule, but the bus skidded around and finally partly capsized in a ditch," as a result of which plaintiff was injured, and if the jury should believe this

theory the defendant would not be guilty of negligence and there would be no liability.

(4) The court erred in refusing to charge defendant's special request No. 2, which was as follows:

"I further charge you, gentlemen of the jury, that it was the duty of the defendant's driver in operating said bus along said highway, to keep a lookout immediately on the road ahead, and in the exercise of due care to observe within a reasonable distance of the road, any object or objects which might be seen if they could by the exercise of due care be seen, and which might be reasonably calculated to obstruct the safe operation of said bus, but the jury must take into consideration the weather conditions, the fact that it was nighttime and also the fact that there was rain and mist on the windshield of the bus, and all of the facts and circumstances in determining whether or not the driver of defendant's bus could, by the exercise of due care have seen said mule in time to have slowed down or stopped and prevented said accident."

(5) The court erred in charging the jury as follows:

"Where there is a law (referring to vol. 1, chapter 255, Private Acts of Tennessee, 1927, Rutherford County, Tennessee), gentlemen, prescribing that no one shall permit stock to run at large in the county, a presumption would arise to the user of the road that there would not be on the highway. loose stock; but that presumption may be overturned and rebutted not only by facts and conditions as may have developed under the testimony in the case, further, any observation of those who are operating busses in the community in question, where there is such a provision as to stock running at large, and if the driver of a bus knew or in the exercise of the highest degree of care should have known that instead of that law being complied with and lived up to by the community in general, and as a matter of fact he did know or should reasonably expect there would be stock running at large on the highway, why then the law itself can be of no avail and still he would have to exercise the highest degree of care in anticipating those things that he knew of or should know of."

(6) The court erred in refusing to charge defendant's special request No. 5, which was as follows:

"You are further charged that a stock law was in force at the time and place the accident occurred, prohibiting stock from running at large, and that said mule was on the highway in violation of said law, and defendant was not required to be on the lookout for loose animals on the highway, and before you can find for the plaintiff, if the defendant is otherwise not liable, you must believe from the evidence that the defendant saw said mule at such a place in the road as he would likely collide with the bus, or by the exercise of proper care could have seen him, and saw said mule or could

have seen him in time to have prevented the accident by the exercise of proper care, with the use of the means at hand.''

(7) The court erred in charging the jury as follows:

''. . . If you cannot reconcile the testimony of the witnesses, then it is up to you to do just such with the testimony of any witness as you think should be done under all the facts and circumstances of the case.''

(8) The court erred in charging the jury as follows:

''The degree of care would be exacted and required of the operator of a bus that is the highest. With reference to the condition of the roadway; it might be an act of negligence to drive a car at fifteen miles or twenty miles when the road is in one condition, while on the other hand to drive it at even a faster rate of speed or slower rate of speed when the road is not in such condition would not be an act of negligence; so, in determining as to whether or not the highest degree of care was exercised by the operator of the transportation company, you will take into consideration all the conditions and the surroundings as shown by the proof at the time, and considering all these elements, and things in the way, and the manner and method of operation, the condition of the highway at the time and the condition of the elements, you will reach the conclusion and determine as to whether or not the driver was exercising that high degree of care that was imposed on him by law in the transportation of passengers.''

(9) The charge was confusing, contradictory, and misleading to the jury, in that the portion set out in assignment of error No. 5 is conflicting within itself when considered together with the following portion of the charge:

''The court further charges you that the defendant could not under the facts of this case have anticipated that a mule would run out from the side of the road in front of the bus, and if you find that the mule did suddenly run out in front of the bus, as aforesaid, and that at the time the chauffeur was in the exercise of high degree of care, and he then exercised proper care to prevent the accident and failed to do so, then the defendant would not be liable.''

(10) The verdict is so excessive as to evince prejudice, passion, and caprice on the part of the jury.

The plaintiff in error, Tennessee Coach Company, a corporation, is a common carrier of passengers, and in that business operates motorbusses between Knoxville and Nashville.

On November 17, 1931, Dr. W. B. Young purchased a ticket at Sparta for Nashville and became a passenger for hire on defendant's bus.

At about 6 o'clock in the evening the bus had reached a point about five or six miles east of Murfreesboro. The road at this point is 18 feet wide with shoulders about 4 or 5 feet wide, and curves slightly

to the right. It was dark and drizzling rain and the road was slippery. The windshield was covered with mist except for a small space of about 10 inches kept clear by the windshield wiper. A mule ran across the highway in front of the bus. The driver applied the brakes, the bus skidded and went off the road and turned over, and the plaintiff was injured.

1. It is the contention of the plaintiff that the mule was running on the left shoulder of the road, in the same direction as the bus, and was seen by the driver when 100 feet away, or should have been seen by the exercise of the highest degree of care; that the driver did not check the speed of the bus but continued to drive at the rate of about 35 to 50 miles an hour on an asphalt road known to the driver to be slippery when wet; that when the bus was about 25 feet behind the mule, the mule, as might have been anticipated by the driver, turned and trotted across the road in front of the bus; that the bus was then about 20 to 25 feet from the mule, the driver applied the brakes, and the bus skidded, ran off the road, and turned over, and plaintiff was injured.

The defendant contends that the bus was being operated on its proper side of the road and under reasonable control, and had been so operated for several miles; that the mule suddenly appeared on the left shoulder, trotting across the road, about 20 or 25 feet in front of the bus; that the driver in order to avoid striking the mule applied the brakes and turned to the right to avoid striking the mule, and the bus skidded and turned over against a telegraph pole. Defendant insists that the bus driver was suddenly placed in a position of peril and that he did what any ordinarily prudent person would have done under the circumstances.

Plaintiff's witness G. N. Wilson testified that when he first saw the mule he was in the middle of the road, trotting across the road; that within about ten or fifteen seconds from the time he saw the mule the driver put on brakes. On cross-examination he said the mule was on the shoulder of the road 100 feet ahead of the bus when he first saw it.

Overton Butler testified for the plaintiff that when he first saw the mule he was on the left shoulder of the road, headed towards Murfreesboro; that the mule suddenly turned and started across the road, and was trotting about 20 feet in front of the bus.

Several of plaintiff's witnesses testified that the road was made of asphalt, was wet and slippery, and that the bus was being driven from 35 to 50 miles per hour when the mule appeared as an obstruction in the road about 20 or 25 feet ahead.

The driver of the bus testified that he could not have seen the mule any sooner than he did, and that the mule suddenly appeared in the highway, running across the road in front of the bus, within 20 or 25 feet of the bus; that he necessarily applied the brakes, which caused the bus to skid and fall over against the bank.

█ It is argued that defendant that plaintiff's witness Wilson had made two entirely different statements of facts; that on direct examination he said he was looking out of the front of the bus, and on cross-examination he said he was looking out of the side window by him; therefore his evidence is of no value, as the two statements nullify each other. Citing Johnston v. Railroad, 146 Tenn., 135, 158, 240 S. W., 429; De Grafenreid v. Nashville Railway & Light Co., 162 Tenn., 558, 39 S. W. (2d), 274.

The determinative question in this case is whether the bus was being driven at a fast and dangerous rate of speed over a wet and slippery road when the mule appeared in the road. It is not shown that it was impossible for Wilson to have seen the road when looking out of the side window. The fact that his two statements about the particular window conflicted is not enough to show that he did not see the mule.

█ But we think that this is immaterial, as other witnesses testified as to the speed of the car, the presence of the mule, and the condition of the road.

There is evidence that the bus was being driven at the rate of 40 to 50 miles per hour. Others of plaintiff's witnesses say 35 to 40 miles per hour. The driver admits that he knew the road was wet, slick, and slippery, and for this reason he cut down the rate to 30 miles per hour, as he could stop it within 10 feet when going at this rate of speed without skidding, and that he could see 100 feet up the road within the rays of his lights.

It is charged in the declaration that he was driving at a fast and dangerous rate of speed on a wet and slippery road.

█ Defendant insists that there is a variance between the evidence and the declaration; that it is averred in the declaration that the driver drove the bus off of the highway, whereas the proof shows that the bus skidded off of the road. We think there is nothing in this contention. When the driver suddenly applied brakes on a wet, slippery asphalt road, while traveling at the rate of 35 or more miles an hour, the effect was the same as if he had driven off of the highway.

█ It was the duty of the bus driver to operate the bus at such a rate of speed that he could stop without skidding, having regard to the slippery road, low visibility on account of rain, mist, etc. We must take that view of the testimony most favorable to the plaintiff, that is, that he was driving at the rate of from 35 to 50 miles per hour on a wet, slippery road, so known to him; hence the question was one for the jury. Grizzard v. O'Neill, 15 Tenn. App., 395.

It results that the first assignment of error must be overruled.

2. Defendant's second assignment is that the court erred in overruling defendant's motion for a mistrial based on the intro-

duction by plaintiff of testimony of G. N. Wilson that the company had settled with him, and of testimony of U. S. Suggs, brought out by cross-examination by plaintiff's attorney, that he had received bruises in this same accident and the company had paid him $14.

■ Evidence that Wilson and Suggs were hurt in this same accident was admissible. Commercial Club v. Epperson, 15 Tenn. App., 649, 659.

"Evidence of similar injuries at the same time, in the same accident, to other persons similarly situated is admissible as tending to show the fact of the accident or injury, its nature and extent, or the negligence of the person charged." 45 C. J., 1245, sec. 808.

■ There is no suggestion of a compromise with Wilson and Suggs. It appears that both received slight injuries for which the company compensated them.

"It may be shown as an implied admission that the party claimed to be subject to a certain liability has paid the claims of others who were in the same position as the claimant." 22 C. J., 320, sec. 354.

On issue of defendant's negligence, plaintiff can prove that defendant has paid others for damages which resulted in like manner. Magnolia Petroleum Co. v. Reed (Tex. Civ. App.), 42 S. W. (2d), 274.

■ Defendant's attorney brought out the fact that Wilson had executed a release, so the plaintiff had a right to explain that the company had settled with him.

■ However, the judge instructed the jury to disregard all the testimony on the question, and also to disregard Sugg's testimony as the company's compensating him, so the defendant was not prejudiced in any event.

3. The court in his general charge failed to charge the theory of the defendant, but the defendant offered a special request setting out its theory, as hereinabove stated, which was declined by the court, and this was made defendant's assignment of error number three. It is insisted by plaintiff below that the request contains an incorrect statement of the law, as it states that if the mule could not have been seen by the driver by the "exercise of due and proper care" then the defendant is not liable.

■ It was the duty of the driver to exercise the highest degree of care in the operation of the bus consistent with the nature of the business. Blashfield's Cyc. of Automobile Law, p. 942; Baskin & Cole v. Whitson, 8 Tenn. App., 578, 588; Railroad v. Kuhn, 107 Tenn., 106, 131, 64 S. W., 202.

■ But we do not agree with plaintiff that the phrase "by the exercise of due and proper care" means only "ordinary care." The court had hitherto explained to the jury that the defendant was a common carrier and that it owed the highest degree of care; hence

the use of the term "due and proper care" meant, in connection with the whole charge, the highest degree of care. The court may use different phrases in the same instruction, defining the care required, and the jury will not be thereby misled. "Due and proper care" meant that kind of care hitherto explained. 45 C. J., 1344, sec. 917. There is nothing in the case of Memphis Street Railway Co. v. Haynes, 112 Tenn., 712, 81 S. W., 374, to the contrary.

But we think the court correctly declined to charge this request, as the court had correctly charged the law applicable to this case, and had not charged the other side's theory.

"Where the trial judge properly charges the law so that it is an intelligent guide to the jury in reaching a correct solution of the case, as they might adopt the theory of facts of the plaintiff or of the defendant, his refusal to charge requests embracing the theory of one party is not error, where he did not undertake to state the theory of either party, even though the propositions of law embodied in the requests are sound." Railroad Co. v. Hatch, 116 Tenn., 580, 94 S. W., 671.

The court had stated the substance of the plaintiff's declaration and the defendant's plea, but had not stated the theories of the parties, except as stated in the pleadings. Every material issue, on which material evidence was introduced, was submitted to the consideration of the jury under proper instructions. This was all that was necessary.

4. Defendant's special request No. 2 was properly declined, as the court had properly charged the jury on the degree of care required of common carriers by bus.

5, 6, and 9. Defendant's fifth assignment complains of the judge's charge on the subject of the stock law.

In substance the judge told the jury that there was a stock law in that county, but if the driver knew that stock might be expected on the highway he would have to exercise the highest degree of care in anticipating them. In substance, he told the jury that there was such a stock law making it unlawful for stock to run at large in Rutherford county, and that a presumption would therefore arise to the use of the road that there would be no loose stock on the highway. However, he further said that this presumption might be overturned or rebutted by facts and conditions shown from the evidence, and if the driver of the bus knew, or in the exercise of the highest degree of care should have known, that, instead of the law being complied with, stock did run at large on the highway, the law would be of no avail.

Defendant offered a special request on this subject, which was refused by the court, and defendant assigns this refusal as error No. 6. The court was not in error in refusing same. The request states that the driver was not required to be on the lookout for

animals in the highway. His duty required him to always be on the lookout.

However, if there was any error in this paragraph of the charge it was cured by the paragraph of the charge set out in the ninth assignment of error.

Not only did the defendant get the benefit of a mere presumption that stock would not be upon the highway, by this instruction, but the trial judge affirmatively instructed the jury as a matter of fact that under the facts of the case the bus driver could not have anticipated that a mule would run out from the side of the road in front of the bus. This was an instruction more favorable to the defendant than it was entitled to have, and the defendant cannot complain that the trial judge committed error by giving the excerpt complained of in this assignment, in view of the last instruction given to the jury, which primarily told them, not as a mere presumption, but as a matter of fact, that the defendant could not have anticipated the sudden appearance of the mule coming from the side of the road in front of the bus.

The driver was required to use the highest degree of care to observe stock, or rather obstructions, in or near the highway regardless of whether there was a stock law. And if, by the exercise of the highest degree of care, he could have seen what others did see, then he was guilty of negligence.

7. The seventh assignment of error is that the judge erred in charging the jury as follows:

". . . If you cannot reconcile the testimony of the witnesses, then it is up to you to do just such with the testimony of any witness as you think should be done under all the facts and circumstances of the case."

The defendant insists that under the foregoing part of the charge the jury was given the right to arbitrarily disregard the testimony of any witness, as they saw fit.

The judge had already instructed the jury as to the burden of proof, had explained preponderance of evidence, had instructed them how to weigh the testimony of each witness and what they should do if a witness swore falsely, and then charged as follows:

"It is the duty of the court to instruct you as to the law of the case; it is your duty to accept the law as given you by the court and apply it to the facts of the particular case; the law presuming that every witness has testified to the truth; but if you cannot reconcile the testimony of the witnesses, then it is up to you to do just such with the testimony of any witness as you think should be done under all the facts and circumstances of the case."

We are of the opinion that, taking the charge as a whole, the jury understood that it was their duty to weigh all the evidence and if possible reconcile the same, but if such evidence could not

be reconciled, then they should use their judgment and discretion as to what testimony to accept as true and what to reject as untrue.

Defendant did not request further instructions on this question, so it waived any objection to this portion of the charge and cannot now assign same as error. Hamilton v. Carter, 14 Tenn. App., 337, 340, 341.

8. That part of the charge complained of in the eighth assignment of error was not error. It is the contention of plaintiff that the driver was driving the bus at an excessive rate of speed considering that it was dark, misty, and raining, and the road slippery; that after the driver saw, or in the exercise of the highest degree of care should have seen, the mule in the road he failed to check his speed; that when about 20 or 25 feet from the mule, traveling at the rate of 35 to 45 miles an hour, he applied his brakes. It was a question for the jury to say whether his speed, at the time of the accident, considering the low visibility and the slickness of the road, caused the accident.

10. We are of the opinion that the verdict was not excessive. Dr. Young had several bruises and injuries. A gash was cut in his head, his ear was almost cut in two, and one of his fingers was badly cut. All of said wounds had to be sutured. A grip or suitcase fell on his back, and his breast and back were injured. Reputable physicians testified that the injury to his back was, in their opinion, permanent; that some of the ligaments were pulled loose from the spine; and that he has a deformed condition or curvature of the back, and walks carrying his body somewhat to the right. He still suffers with his back, and will continue to do so. He was sixty-five years of age and suffered a considerable shock. He suffered much pain, and we think that $5,000 is not excessive.

It results that all of the assignments of errors are overruled and the judgment of the lower court is affirmed. A judgment will be entered in this court for $5,000 and interest from November 13, 1933, to the present, in favor of Dr. W. B. Young and against the Tennessee Coach Company. The cost of the appeal is adjudged against the Coach Company and the surety on its appeal bond. The cost in the lower court is adjudged against the Coach Company.

Faw, P. J., and DeWitt, J., concur.