## SOUTHERN COACH LINES v. HADDOCK. No. 6—194 S. W. (2d) 347.

Eastern Section. January 8, 1946.

Petition for Certiorari denied by Supreme Court, April 27, 1946.

Spurlack & Spears, of Chattanooga, for plaintiff in error.

Harry F. Newton, of Chattanooga, for defendant in error.

McAMIS, J. The Southern Coach Lines has appealed in error from a judgment for $600, based upon a jury verdict, for personal injuries sustained by Mrs. Ethel M. Haddock while riding as a passenger for hire in one of its busses. Mrs. Haddock was injured as a result of being thrown from her seat in the bus when the driver came to a sudden stop in order to avoid colliding with an ambulance at the intersection of Market and 11th Streets in Chattanooga.

The declaration charges, inter alia, that the defendant Bus Company was guilty of negligence in that the bus driver failed to maintain a proper lookout for traffic as he approached the intersection. Since the other charges are not sustained by proof we confine our consideration to this one charge of negligence.

The bus was proceeding North on Market, the ambulance West on 11th Street. The two streets intersect at right angles. There is proof that the bus driver when 55 feet from the intersection could have seen the approaching ambulance when it was approximately 225 feet from the intersection. A passenger on the bus testified that she saw the ambulance when about half that distance from the intersection but the driver testified that he did not see it until it was within about 55 feet of the intersection. The position of the bus at that time is not definitely shown. The driver testified that the ambulance was traveling at least 40 miles per hour; that he continued to operate the bus into the intersection relying upon the approaching vehicle to come to a stop as required by city ordinance of the City of Chattanooga; that no siren was blowing and, it being dark, he did not know that the approaching vehicle was an ambulance; that when the bus was on the ''verge'' of entering the intersection he discovered that it had not stopped and was not going to stop; that he then applied the brakes and brought the bus to a sudden stop within four or five feet of the ambulance which, according to the witness, had cut the corner making a collision imminent.

The learned circuit judge thought a jury question was presented as to whether or not the driver of the bus was in the exercise of the highest degree of care consistent with the practical operation of the bus in not discovering the approach of the ambulance until it was within 55 feet of the intersection and that, while the bus driver was placed

in an emergency by the failure of the ambulance to come to a stop as required and by cutting the corner in front of the bus, the jury might find that the bus driver was not entirely free from negligence and that his negligence contributed to the creation of the emergency. Appropriate assignments challenge this conclusion.

Another ordinance of the City of Chattanooga provides, in effect, that fire trucks and ambulances shall be exempt from the necessity of observing stop signs but, in our view, this is not material because the bus driver, in the absence of a siren, or other warning, could not know that he was about to meet an ambulance in the intersection.

Assuming that the bus driver, in the exercise of the highest decree of care, was not required to know of the exemption of ambulances from the stop ordinance and anticipate that the approaching vehicle might be a vehicle not required to stop, we think a jury question was presented as to whether or not the driver was in the exercise of the highest degree of care consistent with the practical operation of the bus in not being upon the lookout for traffic approaching from the right on 11th Street until he was within less than 55 feet of the intersection and in relying exclusively upon the observance of the stop sign when he saw a vehicle approaching within 55 feet of the intersection at a speed of at least 40 miles per hour according to his own testimony. The speed of the approaching vehicle only 55 feet from the stop sign was suggestive of its inability to stop before entering the intersection and it was for the jury to say whether the driver of the bus exercised the requisite degree of care in relying upon the stop sign and in not checking the speed of the bus before it entered the intersection.

The bus driver's conception of his duty at intersections is summed up in the following testimony: ''You don't go

along looking up streets when you come down to see if anybody is coming, if you are on a through street.''

■ The driver of a vehicle upon a favored highway is not relieved of all duty but must exercise due care in operating his vehicle through the intersection.

In dealing with a similar situation in Duling v. Burnett, 22 Tenn. App. 522, 530, 124 S. W. (2d) 294, 302, Judge Faw enunciated the following rule of conduct:

''Whether plaintiff or defendant had the 'right of way' at the time and place of the collision is not a determinative question. The mere fact that one vehicle has the right of way over another at a street intersection does not relieve the driver of the vehicle thus favored from the duty of exercising due care not to injure others at the street intersection. See Annotations 21 A. L. R. 988; 37 A. L. R. 509; 47 A. L. R. 614; 89 A. L. R. 838.'' See to the same effect Maxwell v. Kirkpatrick, 22 Tenn. App. 21, 116 S. W. (2d) 340; Waller v. Morgan, 23 Tenn. App. 355, 133 S. W. (2d) 614.

These cases all involved situations governed by the rule of ordinary care, while in this case, as learned counsel for the Bus Company concede, the law exacts the exercise of the highest degree of care consistent with the practical operation of the bus.

But it is earnestly insisted that if the driver of the bus had looked to the right sooner and by doing so had discovered the approaching ambulance when further away from the intersection, not knowing that it was an ambulance, he had a right to assume that the driver of the vehicle would obey the law and bring his vehicle to a stop before entering the intersection. As we have seen from the cases cited one charged with the exercise of only ordinary care cannot rely upon this assumption to the exclusion of all care on his own part and the principle relied upon has

been directly held not controlling in cases where the rule of the highest degree of care prevails.

In Tennessee Coach Co. v. Young, 18 Tenn. App. 592, 80 S. W. (2d) 107, 112, the defendant Bus Company relied upon a presumption that stock would not be permitted to run at large in territory where forbidden by statute. Judge Crownover, speaking for the Middle Section of this Court, said:

"The driver was required to use the highest degree of care to observe stock, or other obstructions in or near the highway regardless of whether there was a stock law. And if, by the exercise of the highest degree of care, he could have seen what others did see, then he was guilty of negligence."

Cartwright v. Graves, 182 Tenn. 114, 184 S. W. (2d) 373, 381, involved the liability of the operator of a school bus for injuries sustained by a child struck by an oncoming truck after alighting from the bus. The defendants relied upon the principle that he had a right to assume that the truck would stop as required by Chapter 70 of the Public Ats of 1937. Responding to this contention, Mr. Justice Chambliss said:

"* * * We know of no rule which absolves one from responsibility such as this under such circumstances on the ground that he has right to assume the law would be obeyed. He plainly saw the truck approaching so rapidly that no assurance was afforded that it would stop in time to save the child from injury."

The same contention was made in Oliver v. Yellow Cab Co., 7 Cir., 98 F. (2d) 192, where the court, while conceding the rule, said that it did not operate to relieve from all care and caution the party entitled to expect the other party to perform his duty, and that while the operator of the taxicab had a right to expect the driver of the

parked car not to move into traffic until it could safely be done, nevertheless, the driver of the taxi was still bound to keep a careful watch, and to move at such a rate of speed that his car was within control at all times, so it could be stopped without a violent jolt.

Washington v. City of Seattle, 170 Wash. 371, 16 P. (2d) 597, 600, 86 A. L. R. 113 involved an analogous situation. In fact the circumtances of that case are strikingly similar. There a bus passenger sued the City of Seattle as a common carrier operating a bus line. The plaintiff appealed from an adverse jury verdict and judgment based thereon complaining, among other things, of a charge to the effect that the driver of the bus had a right to expect other traffic to come to a stop as required by ordinance at the intersection "and had a right to rely upon such expectation until such time as he saw, or, in the exercise of reasonable care should have seen, that said defendant John Claseman was not going to bring his car to a stop." Of this charge the court said:

"The second paragraph relates to the respondent city. It, also, is erroneous, in that it adopts the incorrect standard of care to be exercised by the city. A common carrier, such as the city in this instance was, is held to the highest degree of care compatible with the practical operation of its buses. That duty would not be met, as a matter of law, by mere observance of the law of the road. Singer v. Martin, 96 Wash. 231, 164 P. 1105. Counsel for the city assert that the identical instruction was given and approved in Comfort v. Penner, 166 Wash. 177, 6 P. (2d) 604. That case did not involve a common carrier. The bus driver's negligence, if any, as between him and his passenger, is to be measured by his duty as a common carrier, not by his duty to the other users of the road. The intruction was prejudicially erroneous in the particulars referred

to.'' To the same effect see McDorman v. Dunn, 101 Wash. 120, 172 P. 244.

But it is earnestly and plausibly insisted that even if the bus driver should have seen the ambulance further back from the intersection and if he was not in the exercise of the highest degree of care in assuming that the driver of the ambulance would obey the stop sign ''still this doesn't take away from the driver the right to assume that if the ambulance was going to run as fast as it did that it would not cut the corner as well as fail to stop.''

■ • We are unable to say as a matter of law that the cutting of the corner was the proximate cause of plaintiff's injuries in the absence of proof as to the width of 11th Street and how much closer the ambulance came to the front of the bus by reason of cutting the corner. While the driver of the bus might have had a few more feet in which to bring the bus to a stop we are unable to say as a matter of law that he would not have been compelled to make a quick stop to avoid a collision.

■ Duling v. Burnett, 22 Tenn. App. 534, 124 S. W. (2d) 294, 302, cited supra, the opinion quotes with approval the following rule from Automobile Accident Suit, sec. 599, page 744:

''Generally when such an act as cutting a corner or shifting diagonally from one line of traffic to another is alleged to have resulted in a collision and injury to the plaintiff, the question of proximate cause is a jury question.''

For the reasons indicated, we think the case was properly submitted to the jury and it is unnecessary to consider whether the highest degree of care required the driver of the bus to anticipate that the approaching vehicle was of one of the classes not required to stop.

One of the assignments is that the court erred in charging the jury "* * * with reference to the Ordinance set up by the plaintiff in its replication, if you find this other vehicle was an ambulance, going after—for the purpose of carrying injured or sick persons to the hospital, or other places for treatments, such vehicle would have had the right of way."

If this was error it was cured by charging the jury as requested: "I charge you as a matter of law that this ambulance under the law was required to stop at Broad Street as required by the ordinances as plead by the defendant."

The assignments for the reason stated must be overruled and the judgment affirmed with costs.

Hale and Burnett, JJ., concur.