MRS. RUTH STACKS, Plaintiff-in-Error, v. VETER-AN'S CAB COMPANY and JOHN TURNER, Defend-ants-in-Error.—366 S.W. (2d) 539.

Western Section. April 27, 1962.

Certiorari Denied by Supreme Court September 7, 1962.

John B. Mack, J. W. Kirkpatrick, Maxwell D. Lucas, Jr., and Clifton, Mack & Kirkpatrick, Memphis, for plaintiff-in-error.

Edward W. Kuhn, John F. Watson, and McDonald, Kuhn, McDonald, Crenshaw & Smith, Memphis, for defendants-in-error.

CARNEY, J. There was a jury verdict below in favor of the defendants and the plaintiff, Mrs. Ruth Stacks, has appealed in error.

She sought recovery of damages for personal injuries sustained when the taxicab in which she was riding as a passenger stopped very suddenly throwing her forward against the front seat.

Plaintiff had called the cab to her home to drive her to work at the Peabody Hotel in Memphis. It was being driven by defendant, John Turner. At the time of the accident they were traveling northward on Third Street and were less than 100 feet south of an alley which runs east and west along the rear of the Peabody Hotel. In addition to the parking lanes on either side of Third Street there are three lanes for vehicular traffic, all northbound. The defendant Turner was driving in the westernmost lane preparatory to turning left and westward into the alley. His speed was approximately 20 miles per hour. The left side of the cab was about two feet from a line of parked cars.

An occupant of an automobile parked on the west side of Third Street opened the right door of this automobile directly in front of the taxicab. The car door was about four feet wide and extended over about two feet in front of the cab. The front bumper of the cab was approximately 20 feet from the car door when it was opened. There was no traffic ahead, behind or to the side of the cab which would have in any manner impeded an effort by the cab driver to go around the open door.

The defendant Turner elected to apply his brakes and stop the cab rather than to pull to his right and try to miss striking the door and occupant who was alighting

from the parked automobile. Plaintiff was riding in the back seat and was injured when she was thrown forward against the back of the front seat of the cab.

The defendants relied upon the doctrine of sudden emergency and His Honor the Trial Judge charged this theory to the jury. It was the contention of the plaintiff below and it is her contention in this court that the cab company and its driver are not entitled to rely upon the doctrine of sudden emergency in this case because the defendant Turner, as the public carrier of a passenger, is charged with the highest degree of care toward the plaintiff as distinguished from ordinary and reasonable care. Citing Southern Coach Lines v. Haddock, 29 Tenn. App. 132, 194 S.W.(2d) 347, and Tennessee Coach Co. v. Young, 18 Tenn.App. 592, 80 S.W.(2d) 107.

Also the plaintiff insisted in the court below that the doctrine of sudden emergency does not apply at all when the emergency is created or contributed to by the negligence of the defendants. National v. Dalebite, 15 Tenn. App. 42; Noshey v. Slover, 14 Tenn.App. 42; Cullom v. Glasgow, 3 Tenn.App. 443.

Assignments of error Nos. 2 and 3 insist that His Honor the Trial Judge was in error in charging the doctrine of sudden emergency and that such defense should have been withdrawn from consideration by the jury. We copy portions of the charge complained of as follows:

"2. The Court erred when it charged the jury, as the law on sudden emergency, as follows:

" 'Now, gentlemen of the jury, in this case the doctrine of "sudden emergency" has been raised in that it is contended that the defendant, John Turner,

the driver of this cab, was operating his cab in a sudden emergency at the time this accident occurred.

" 'Now, whether or not this was a sudden emergency is a question of fact for you gentlemen to determine. Then, if you find there was a sudden emergency existing, it is my duty to tell you how to apply the law in reference to the doctrine of sudden emergency.

" 'Where one is confronted with a sudden emergency and that sudden emergency was produced by the act or acts of another and that one acting in the sudden emergency, was not guilty of negligence which produced this sudden emergency, then and in that event, the person acting in the sudden emergency, under the stress of time, the suddenness of the circumstances, would not be guilty of negligence if he exercised *his best judgment* even though *his best judgment* turns out to be wrong.

" 'In this case, gentlemen, since the driver of this cab was a carrier of a passenger, it was his duty, if he was acting under a sudden emergency, to exercise that degree of care that a prudent person would have exercised under similar circumstances charged with this degree of care. So, you have to determine, first, whether in this case there was a sudden emergency that confronted John Turner. Then, if you find that a sudden emergency existed, then you must go one step further and determine whether or not the sudden emergency was created by the act or acts of defendant, John Turner.

" 'If you find that the sudden emergency was created by the negligence of the defendant, John Turner,

then in the event, that defendant would not be entitled to rely on the doctrine of sudden emergency; but if he was not guilty of negligence in creating the emergency, then the doctrine would apply to him if he exercised that degree of care that the law placed upon him—that is to say, as the driver of a cab carrying passengers charged with the duty of exercising the highest practicable degree of care under the circumstances.' (Emphasis supplied). (R. 150-151).

"3. The Court erred when it charged the jury, as defendants' theory and contentions, as follows:

" 'It is their theory and contention, gentlemen of the jury, that he was driving at about 20 miles an hour with his cab under proper control, and that as he reached a point some 15 feet, or approximately that, or probably a car length and a half, from a car that had been parked at the west curb of Third Street, and that someone in the car suddenly opened the car door to the right on the street.

" 'It is their theory and contention, gentlemen of the jury, that he applied his brakes, that he applied his brakes rather suddenly and made an abnormal stop in an effort to avoid striking that car door, which he did. It is their theory and contention that the driver, John Turner, exercised that degree of care the law placed upon him.

" 'He says in substance and in fact that this stop was incident to the operation of the cab in an ordinary manner and by one charged with the highest practicable degree of care. He says he was confronted with a sudden emergency due to no negligence on his part and that he used *his best judgment,*

and that best judgment being that degree of care that a driver of a cab charged with the exercise of the highest degree of care would have used under the circumstances. Therefore, they deny they were guilty of negligence as alleged against them by this plaintiff; and, gentlemen of the jury, if you find that theory and contention true, then you should return your verdict in favor of the defendants.' (Emphasis supplied) (R 153-154).''

In Tennessee Coach Co. v. Young (1934), 18 Tenn. App. 592, 80 S.W.(2d) 107, on a rainy night a mule ran across the highway in front of a bus; the driver applied his brakes; the bus skidded off the road, turned over and the plaintiff was injured. The jury awarded damages and the bus company appealed. Judge Crownover, speaking for this Court, announced the rule that the driver of the bus was charged with the highest degree of care toward his passenger in the operation of the bus consistent with the nature of the business.

Later in Southern Coach Lines Co. v. Haddock, 1946, 29 Tenn.App. 132, 194 S.W.(2d) 347, there was a jury verdict in favor of the plaintiff, Mrs. Haddock, who was injured as a result of being thrown from her seat in the bus when the driver came to a sudden stop in order to avoid colliding with an ambulance which ran a stop sign at the intersection of Market and 11th Streets in Chattanooga. The proof showed that the bus driver, when 55 feet from the intersection, could have seen the approaching ambulance when it was approximately 225 feet from the intersection. The bus driver assumed that the ambulance driver would observe a stop sign.

It was the insistence of the bus company that the driver had a right to assume that the ambulance driver

would observe the stop sign and that the bus driver had no way of knowing that the vehicle approaching was in fact an ambulance and exempted by city ordinance from observing the stop sign. In the opinion by Presiding Judge McAmis this Court reannounced the rule to be that the law exacted of the bus driver the highest degree of care consistent with the practical operation of the bus and held that it was a jury question whether or not the bus driver was in the exercise of that highest degree of care when he failed to be on the lookout for traffic approaching from the right on 11th Street until he was within less than 55 feet from the intersection and in relying exclusively on the observance of the stop sign when he saw a vehicle approaching at a speed of at least 40 miles per hour. Judge McAmis expressly refused to consider whether the highest degree of care required the bus driver to anticipate that the approaching vehicle was one of the classes not required to stop.

Thus we see that neither of these cases discuss the question of sudden emergency eo nomine.

■ However, we are of the opinion that the language of these two cases indicates that under certain factual situations sudden emergency could be a defense to action by passengers even though the bus driver was charged with the highest degree of care.

In the present case the defendant cab driver was travelling in the westernmost traffic lane preparatory to turning left into the alley. To hold that he must have driven his cab slow enough that he could bring his cab to a stop without a jolt to the plaintiff in the event an occupant of a parked car opened a door into the traffic lane might, if carried to the ultimate, require the cab driver to drive

at a snail's pace because an occupant could conceivably open the door of a parked car when the cab was only three feet from the parked automobile. Driving at such a slow pace would be detrimental to all other traffic on the busy streets of Memphis, probably vexatious to the passengers and financially prohibitive to the cab driver and his employer.

We think the more reasonable rule should be and is that the defense of sudden emergency is available to cab drivers charged with the highest degree of care as well as to other motorists' charged only with ordinary care. This is the rule applicable to other types of public carriers. 10 Am.Jur. Carriers, page 214, Section 1344, Emergency Stops.

In the case at bar the driver of the taxicab was driving 20 miles per hour and his speed immediately prior to the accident was not such as to alarm the plaintiff.

He was travelling in the westernmost or extreme left hand lane of traffic preparatory to turn left into the alley. Ordinarily, this would be the proper lane for the driver of the cab to follow preparatory to turning left. The right front door of the parked automobile opened immediately into the path of the cab when it was approximately 15 feet away. Can we say that all reasonable men must agree that the defendant, John Turner, driver of the cab, violated his high duty of care to his passenger, the plaintiff, by electing to stop his taxicab suddenly rather than to pull over into the middle lane of traffic and attempt to by-pass the open door of the parked automobile and the occupant thereof? We think not. Admittedly the occupant of the parked automobile was guilty of proximate negligence in suddenly opening the door into

the lane of traffic without warning. It was a question for the jury to determine whether the defendant Turner, driver of the cab, was also guilty of proximate negligence in stopping his cab rather than electing to pull out into the middle traffic lane.

The proof affirmatively shows that there was no traffic coming from the north or from the south and that the defendant could have avoided the sudden stop which injured the plaintiff in the present case by pulling out into the middle lane of traffic with safety. Absent a reasonable explanation for his failure so to do the defendant, John Turner, might be guilty of proximate negligence as a matter of law. However, his explanation in defense is that he was confronted with a sudden emergency not of his own making and that he used his best judgment at the time by electing to stop rather than pull out to his right and that he was not guilty of negligence.

From Fergason v. Crawford, 1940, 24 Tenn.App. 646, 148 S.W.(2d) 45, we quote the following rules or measures of conduct for one placed in a sudden emergency:

"(1) The measure of conduct of one so placed is clearly stated in Moody v. Gulf Refining Co., 142 Tenn. 280, 218 S.W. 817, 8 A.L.R. [1243] 1293 where the court said:

" 'One who in sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence.'

"(2) Also pertinent here is the rule announced in Tennessee Electric Power Co. v. Hanson, 18 Tenn.

App. 542, 79 S.W.(2d) 818, 822 as follows:

" 'When a person has been put in sudden peril by the negligent act of another, and in an instinctive effort to escape from that peril, either suffers injury himself, or does injury to a third person, the negligent act is the proximate cause of injury, and it is immaterial that under different circumstances he might or ought to have seen and avoided the latter danger.'

"A more recent authority summarizes the rule in the following language:

" 'The sudden emergency doctrine is not an exception to the general rule; the question is whether the defendant acted as an ordinarily prudent and careful person would have done under the same circumstances, and the emergency is one of the circumstances contemplated by the rule. If the defendant's course was one that an ordinarily prudent and careful driver put in such a position might have taken, he is relieved from liability; otherwise he is not. The driver's own judgment or impulse is not in any situation, emergent or otherwise, the law's criterion. The driver is exonerated if the course which he takes in an emergency is one which might fairly be chosen by an intelligent and prudent person. If the skidding of a car is the proximate cause of a collision, the owner or operator of the vehicle with which it came into collision is not liable even though he may have been negligent in some respects.' 5 Am.Jur., Sec. 171 (Automobiles), p. 601."

■ We think the Trial Judge properly submitted to the jury the question of defendant Turner's alleged

sudden emergency. Assignments of error 2 and 3 are respectfully overruled.

 Assignment of error No. 4 complains of the action of His Honor the Trial Judge in refusing to charge plaintiff's special request No. 11 which was to the effect that the operator of a taxicab or other common carrier of passengers for hire must always keep a careful watch for other vehicles and is obligated to move at such a rate of speed and have such control of his vehicle that he can stop it without a violent jolt to his passengers should the necessity to stop arise. Southern Coach Lines Co. v. Haddock, 29 Tenn.App. 132, 194 S.W.(2d) 347; Oliver v. Yellow Cab Co., 7 Cir., 98 F.(2d) 192.

It is true that the language relied upon by plaintiff in her special request was used and approved in the two cases cited. However, a study of the entire charge of His Honor to the jury indicates that the issues involved were fairly and properly presented to the jury and we find no reversible error in the refusal of His Honor to charge the special request. T.C.A. sec. 27-117. The assignment of error is therefore respectfully overruled.

██ ██ Assignment of error No. 5 is to the effect that the verdict of the jury is contrary to all the evidence and law in the case and contrary to the greater weight and preponderance of the evidence and is obviously a result of unaccountable caprice and misunderstanding on the part of the jury. The record does not show affirmatively unaccountable caprice on the part of the jury and the assignment is overruled. Those portions of the assignment that the verdict of the jury is contrary to the evidence and the law and contrary to the greater weight

and preponderance of the evidence do not present questions properly to be determined by this Court on appeal.

Assignment of error No. 1 insists that His Honor was in error in failing to direct a verdict at the conclusion of all the proof in favor of the plaintiff on the issues of liability and in failing to submit to the jury only those issues relating to the amount of the plaintiff's damages. As we have said above we think the issues were properly submitted to the jury by His Honor the Trial Judge and this assignment of error must also be overruled.

Judgment will be entered dismissing the appeal in error and affirming the judgment of the lower Court at the cost of the plaintiff-in-error.

Avery, (P. J. W. S.), and Bejach, J., concur.