NASHVILLE, C. & ST. L. RY. *v.* JOHN T. AKIN.

(*Nashville.* December Term, 1917.)

1. CARRIERS. Injuries to passengers. Sudden jerks.

A railway is not liable under the *res ipsa loquitur* doctrine for an injury to a passenger caused by the jerk or lurch of a train in coming to a stop, in the absence of proof that such jerk was not necessarily incident to the stop   (*Post, p.* 37.)

2. CARRIERS. Injuries to passengers. Starting train while passenger is alighting.

Where a train has stopped for a passenger *to* alight, and while she was walking down aisle of car the train without warning suddenly started, the railway is liable for injury caused by the jerk, without proof by plaintiff that start was unnecessarily violent.   (*Post, pp.* 37, 38.)

Case cited and approved:   Railroad v. Mitchell, 98 Tenn., 30.

3. CARRIERS. Injury to passenger. Sufficiency of evidence.

Where in an action for death of a passenger about to alight plaintiff does not show whether the injury was due to jerk of train in stopping for which railroad would not be liable, or to sudden start without warning, for which it would be liable, plaintiff, cannot recover.   (*Post, pp.* 38, 39.)

Case cited and approved:   Railroad v. Lindamood, 111 Tenn., 457.

4. CARRIERS. Action for injury to passenger. Sufficiency of evidence.

In an action against railway for death to passenger while alighting from train, evidence *held* sufficient to show that the injury was due to sudden starting of train without warning and not to the jerk of train in stopping for the passenger to alight.   (*Post, pp.* 39, 40.)

FROM CHEATHAM.

Appeal from the Circuit Court of Cheatham County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —Hon. Douglas Wilke, Judge.

Pardue & Marable, Savage & Fort, and Claude Waller, for plaintiff in error.

Faw & Crockett and Duke & Fetts, for defendant in error.

Mr. Justice Williams delivered the opinion of the Court.

This suit was instituted by John T. Akin, as administrator of Mrs. Judith Ann Akin, for the alleged wrongful death of his intestate by reason of injuries inflicted on her while a passenger on a train of the railway company. It was averred in the first count of the declaration, in substance, that Mrs. Akin boarded one of the company's trains at Bellevue for the purpose of going to Kingston Springs, and that when the train reached the latter station the cars stopped where passengers were usually taken on and discharged. Thereupon she was invited by the agents of the railway to alight, and when she arose from her seat for the purpose of alighting and

was proceeding down the aisle of the car, and when she was a short distance from the steps leading from the coach to the ground, the agents in charge of the movements of the train, without warning or notice, gave the train of cars a start forward so suddenly that intestate was thrown to the floor of the car, suffering an injury, a broken hip, from which after much suffering she died.

A second count set forth that before the train came to a stop, intestate, after an invitation to alight, while walking down the aisle of the car was thrown to the floor by a jerk or lurch of unnecessary and unusual violence, etc.

That Mrs. Akin was thrown to the floor of the car in which she was a passenger at the station of destination, and suffered fatal injuries, was proved; but a close question of fact is presented on the record as to whether the fall was caused by a sudden starting forward of the train after it had come to a stop, as averred in the first count, or by the movement of the train incident to its coming to the first stop at Kingston Springs. It appears that after that stop the train pulled up, in a short time, to a tank to take water, where it made a second stop, the distance of the movement of the train to the tank being five to ten feet. The fate of plaintiff's case depends upon the close and narrow question of fact just stated.

It affirmatively appears from the evidence offered by the plaintiff that there was no unusual movement of the train as it approached the station and

came to the first stop.   No extraordinary jerk or lurch is shown

There could be no recovery in the event that intestate fell before or at the time of the first stop, without such showing of an unusually violent or negligent jerk or lurch of the train.   The principle of *res ipsa loquitur* does not apply, in that aspect, since it does not appear that there was any force or violence that was not usual and incident to the ordinary or efficient operation of the train.   An inference of negligence, on this phase of the case, arises only when the jerk or lurch is shown to be extraordinary so as to be attributable to unskillful handling of the train or other fault of the carrier.   Jerks, jolts, and lurches, according to common knowledge, occur in the ordinary non-negligent operation and stopping of a train of a commercial railway.

But an inference of negligence on the part of a carrier, which is involved in the doctrine of *res ipsa loquitur*, obtains upon proof of injury to a passenger caused by the sudden starting of the train without warning after it had come to a stop at the station, and while the passenger was alighting at what he was induced to believe was the regular or final stop for disembarkation, since in the exercise of due care the train would not be so started.   In such circumstances it is not required of a plaintiff that he show that the start was accompanied by an unusually violent jerk or movement.

The result of the best decisions is thus tersely stated in 4 R. C. L., p. 1245:

"In the case of persons in the act of boarding or leaving its (the carrier's) vehicle, any movement of such vehicle before the passenger has had a reasonable opportunity to reach a place of safety therein or to alight therefrom is negligence rendering the carrier liable to one injured thereby, whether such movement be unusual or unnecessary or not. The negligence consists in the mere act of moving the vehicle under such circumstances."

See, also, 10 C. J., p. 1031, and *Railroad* v. *Mitchell,* 98 Tenn., 30, 40 S. W., 72.

Any necessary movement in such circumstances carries an inference of negligence if the passenger is not warned.

The railway company insists, however, that there is no evidence showing that the deceased's fall was caused during, and as a result of, the second movement, rather than before or at the time of the first stop, and it is urged that in this attitude plaintiff cannot recover on either count of the declaration.

This argument is based upon a sound rule of law to the effect that if personal injuries may, on the proof adduced, be due either to a negligent or to a nonnegligent cause, a defendant may not be held to respond in the absence of any proof referring the injury to his negligence as the producing cause. *Railroad* v. *Lindamood,* 111 Tenn., 457, 474, 78 S. W., 99, and cases in accord.

We find in the testimony of witness Anderson these facts which relate to the crucial question of fact:

The attention of this witness was attracted by the screams of a woman; at the time the train had stopped; Mrs. Akin was near the car door. At the request of the conductor he rushed into the car to aid the conductor in carrying her down the car steps to the ground. When Mrs. Akin was reached "she was kind of holding up against the side of the car door."

We think that the jury was warranted in inferring that the fall and the scream were, practically speaking, coincident, and that both occurred about the time the train stopped the second time. It is further shown that the conductor and the flagman (the latter with his step box) had stepped from the car to the ground when the first stop was made. It is not likely that, had the fall and scream occurred at the first stop, they would have so left the train, but it is more probable that one of them would have rushed to the aid of the woman.

Mrs. Akin was seventy-three years old, fleshy, clumsy, and somewhat decrepit, and the above inference by the jury was in accord with the theory of plaintiff that she in her condition probably would not have left her seat to leave the car until the train had come to a full stop the first time.

We are of opinion that the circumstances above narrated amounted to some evidence as to when de-

ceased fell.  The railway company declined to intro-
duce any witnesses.

The trial judge refused to direct a verdict upon
the railway company's motion, and the court of civil
appeals affirmed the ruling.   That refusal being the
only error assigned in this court in support of the
petition for *certiorari*, we direct an affirmance.