## MOBILE & O. R. CO. v. HEDGECOTH.
### (6 Div. 643.)

(Supreme Court of Alabama. Oct. 28, 1926. Rehearing Denied Nov. 26, 1926.)

**1. Master and servant ☞285(11).**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for death of switchman found under kicked car, railroad's negligence as cause of injury *held* for jury.

**2. Negligence ☞121(5).**

Though cause of injury and question of actionable negligence may be established by circumstantial evidence, circumstances themselves must be proved, not presumed.

**3. Master and servant ☞285(11)—Jury may reject testimony of engineer as to cause of death of switchman, and draw reasonable inference to contrary from circumstances.**

Where there were no eyewitnesses to accident resulting in switchman's death, and no proof available to plaintiff other than testimony of railroad employés, jury might accept that part of testimony of engineer as to backing and coupling cars, and to reject other part as to manner in which it was done, and draw a reasonable inference to the contrary from circumstances shown.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Action by Daisy Hedgecoth, as administratrix of the estate of Carl A. Hedgecoth, deceased, against the Mobile & Ohio Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Foster, Rice & Foster, of Tuscaloosa, for appellant.

The fact of accident to an employee raises no presumption of negligence of the employer. Negligence must be affirmatively proved. St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70; Mathews v. Alabama Great Southern R. Co., 200 Ala. 251, 76 So. 17; Southern Sewer Pipe Co. v. Caraway, 182 Ala. 669, 62 So. 527; Patton v. Texas & P. R. Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361; Midland Valley R. Co. v. Fulgham, 181 F. 91, 104 C. C. A. 151, L. R. A. 1917E, 1. When the testimony leaves the matter uncertain and shows that any one of several things may have brought about the injury, for some only of which the master is responsible, it is not for the jury to guess between these several causes, and find that the negligence of the master was the real cause, when there is no satisfactory foundation in the evidence for that conclusion. Continental Casualty Co. v. Paul, 209 Ala. 166, 95 So. 814, 30 A. L. R. 802; American Cast Iron Pipe Co. v. Landrum, 183 Ala. 132, 62 So. 757; Southworth v. Shea, 131 Ala. 419, 30 So. 774. One presumption cannot be based upon another presumption; an inference of

fact should not be drawn from premises which are uncertain. Gadsden General Hospital v. Bishop, 209 Ala. 272, 96 So. 145; Looney v. Metropolitan R. Co., 200 U. S. 480, 26 S. Ct. 303, 50 L. Ed. 564; United States v. Ross, 92 U. S. 281, 23 L. Ed. 707; Chicago, M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 46 S. Ct. 564, 70 L. Ed. 1041.

London, Yancey & Brower, George Frey, and 'Frank Bainbridge, all of Birmingham, for appellee.

Negligence resulting in the death of an employee may be proved by direct evidence, and may also be established by facts and circumstances surrounding his death. Choctaw, O. & G. R. Co. v. McDade, 191 U. S. 64, 24 S. Ct. 24, 48 L. Ed. 96; Bromley v. Birmingham Mineral R. Co., 95 Ala. 397, 11 So. 341; Davis v. Sorrell, 213 Ala. 191, 104 So. 397; Alabama Great Southern R. Co. v. Skotzy, 196 Ala. 25, 71 So. 335; Alabama Great Southern R. Co. v. Cornett, 214 Ala. 23, 106 So. 242. In the absence of proof to the contrary, an employee killed while performing duties under his employment is presumed not to have been negligent, and to have exercised due care and precaution. Thornton v. Seaboard Air Line Ry., 98 S. C. 348, 82 S. E. 433; Bromley v. Birmingham Mineral R. Co., supra. Causal connection or proximate cause of an injury is ordinarily a question of fact for the jury, and the same is to be determined from all the circumstances of the particular case. Alabama Great Southern R. Co. v. Cornett, supra.

GARDNER, J. Action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) to recover damages for the death of Carl A. Hedgecoth, who met his death about 10:30 o'clock on the night of March 31, 1925, while in the employ of appellant as field switchman in its yards at Tuscaloosa, Ala. No question is presented as to due proof of dependency, earnings of deceased, or amount of the recovery, and it is conceded that the deceased employé was engaged in work of such interstate character as to bring the case within the influence of the federal act.

[1] The refusal of the affirmative charge requested by appellant is the only question here presented for consideration.

There was no eyewitness to the accident, and appellant's insistence for the affirmative charge rests upon the theory that actionable negligence has not been made to appear, but that the cause of the death of Hedgecoth is a matter of mere conjecture and speculation, insufficient upon which to base a jury's verdict. South. Sewer Pipe Co. v. Caraway, 182 Ala. 669, 62 So. 527; St. L. & S. F. R. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70; C., M. & St. P. Ry. Co. v. Coogan, Adm'x, 46 S. Ct. 564, 70 L. Ed. 1041.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[2] All the authorities agree, of course, that the cause of the injury and the question of actionable negligence may be established by circumstantial evidence, but, as said by the United States Supreme Court in the Coogan Case, supra:

"Whenever circumstantial evidence is relied on to prove a fact, the circumstances must be proved and not themselves presumed."

The sole matter, therefore, here for determination relates to the sufficiency of the circumstantial evidence to establish the negligence charged.

At the time Hedgecoth was killed, the switching crew was engaged in switching on to the scale track and weighing a train of ten cars. The scale track was level, but declined from this level place in both directions to the north and to the south. The end of the decline to the north of the scale house was about 300 feet from the scales. The decline of the track was such as to permit the cars rolling to the "bottom of the hill," as witnesses called it, after being "kicked" off the scales. It was the duty of Hedgecoth to ride on the first car weighed, called the "regulating car," and to stop it with a hand-brake after it had rolled about a car length from the scales, which was done. The next car was then moved by the engine on to the scales, where it was weighed and "kicked off," rolling down the incline until it came in contact with the "regulating car," on which was the deceased. The brakes on the "regulating car" were then released, and both cars thus permitted to roll down the track about another car length, and this process continued until all but the last two or three cars attached to the engine had been weighed.

We note here the insistence of counsel for appellant to the effect that the evidence is insufficient to show at what point on the track the "regulating car" and the second car came in contact, but we think the following excerpts from the testimony, noted in brief of appellee's counsel, sustain the conclusion of fact as above outlined:

"We spotted the first car, that is, the car furtherest from the engine, on the scales, and weighed that one, and I told Mr. Hedgecoth to get on that car and ride it down the track. I cut that car off, and he rode it down, about 20 or 30 feet. We weighed the next car, cut it off, and dropped it down on top of that one. Hedgecoth let the brake of the car he was riding off, and let them drop down a little bit further, 20 or 30 feet at a time, and kept up that way until we got to the eighth car. So far as could be seen by the foreman of the crew, Mr. Hedgecoth was performing his duties, which were to let his car roll down about a car length and then stop, and when the next car reached his car to drop his [car] another car length, and continue to do so as long as there were cars to be put on the track."

As the cars rolled down the track and came in contact they coupled automatically, except the "regulating car" and the second car, which, for some reason not necessary here to inquire, did not couple. The last three cars to be weighed were left connected and coupled to the engine. Neilson, the foreman of the crew, states that upon these three cars being weighed he called to deceased that "we were ready to go," and, receiving no answer, he walked down the track to see what was the matter. He found the body of deceased under the first pair of tracks of the second car that was "kicked off," about 4 or 5 feet from the north end of the car, one wheel having passed over his body. Neilson further testified that he last saw deceased when they were weighing next to the last car. His lantern was lit on top of the "regulating car," which was his place of duty. The witness in this connection said:

"His place of business was on the end of the car he rode down. I never saw him on the ground that night before I found him dead. I saw his lantern when we were weighing the next to the last car; it was lit up about the top of the car he rode down. That was when we weighed the next to the last car, I never saw thereafter until I saw him dead. * * * At the time I saw Mr. Hedgecoth's lantern and saw him on top of that car, I could not tell whether all the cars rolled down the track had been coupled up or not."

It takes from one to three minutes to weigh a car. The witness further stated that the "regulating car," on which deceased was last seen alive, was standing on the track with the brakes "set up tight," and nothing connecting with it and ten or twelve feet from the car next to it, and with the brakes so set the car would not "move down the track unless something moved it." No brakes were applied to the other cars, and we think it very clearly appears that as the cars were "kicked off" and rolled down the track they were stopped by this "regulating car." Neilson states positively that after the last car was weighed the engine made no movement to back the cut of cars and couple with those that had been cut off and rolled down the track, and that he gave no signal to that effect. In this respect his testimony is in sharp conflict with that of Maharry, the engineer, who testified that he backed up two car lengths, about 60 feet, after the last car had been weighed, and coupled with the cars that had been cut loose; that he could not see these cars, and depended entirely upon signals given by Neilson, the foreman, to know whether he was near the cut of cars; that the other cars were standing still as he backed and coupled with them. No signal was given deceased as to the movement of any car coming in contact with the car he "rode down," as he was presumed to be expecting such contact. Deceased was an experienced, careful, and efficient switchman.

Appellee insists that the facts and circumstances are sufficient for a reasonable infer-

ence that the engineer backed into these cars that had been "cut loose" and standing on the track, with such unusual force and in such negligent manner as to cause deceased to fall from the "regulating car," and thus meet his death. St. L. & S. F. R. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70; B. M. R. Co. v. Wilmer, 97 Ala. 165, 11 So. 886.

Very clearly the cut of cars was being held on the track by the "regulating car" when the engine backed into them, and, when the body of deceased was found under the second car, the "regulating car" was separate from this second car some 12 feet; the others being coupled to the engine and so held on the track. If the cars cut loose were held on the track by the "regulating car" (which we conclude sufficiently appears from the evidence, or reasonable inferences to be drawn therefrom), and, after the engine was coupled thereto, deceased's body was found under the second car, his lantern extinguished and on the ground, the "regulating car" some 12 feet distant down the track, separate from the second car, and yet standing with the brakes set tight, we are of the opinion that this reasonable inference may be drawn that this separation was caused by the engineer driving the car back with unnecessary and unusual violence—this though the engineer insists he backed the cars slowly and with due care.

[3] There were no eyewitnesses and no proof available to plaintiff other than the testimony of defendant's employés. The jury was authorized to accept that part of the testimony of the engineer as to backing and coupling the cars, and to reject the other portion as to the manner in which it was done, and draw a reasonable inference to the contrary from the circumstances shown. Cent. of Ga. Ry. Co. v. Ellison, 199 Ala. 571, 75 So. 159; Gilchrist, etc., Co. v. Bearry, 210 Ala. 472, 98 So. 478.

We are of the opinion the trial court correctly ruled in submitting the issue of the negligence charged to the jury's determination, and that this conclusion is supported by somewhat analogous cases of A. G. S. R. Co. v. Cornett, 214 Ala. 23, 106 So. 242; Bromley v. B. M. R. Co., 95 Ala. 397, 11 So. 341; Choctaw, etc., R. R. Co. v. McDade, 191 U. S. 64, 24 S. Ct. 24, 48 L. Ed. 96; Porter v. L. & N. R. R. Co., 201 Ala. 469, 78 So. 375.

We have examined with care the case of Chicago, St. Paul Ry. Co. v. Coogan, supra, cited by counsel for appellant, but think it readily distinguishable on the facts from the instant case, and in no wise militates against the conclusion here reached.

It is insisted by appellee there is still another theory upon which the question of negligence was properly submitted to the jury, based upon the following facts: The foreman testified positively he did not signal the engineer to back, and that no necessity existed for the engine to be backed into these cars, and the testimony of the engineer is to the effect it would have been improper to back the engine without a signal.

Appellee insists upon still another theory of negligence, to the effect that (considering the testimony of the engineer in connection with that of the foreman) the engineer made an unnecessary and unexpected backing movement of the engine, without a signal, and with no one to guide him, which, under the circumstances, was essential, but, as the conclusion hereinabove stated suffices for a disposition of the cause, this further insistence need not be here considered.

Let the judgment be affirmed.

Affirmed.

SAYRE, MILLER, and BOULDIN, JJ., concur.