42 So.2d 340

**CANNON v. LOUISVILLE & N. R. CO. et al.**

**3 Div. 531.**

Supreme Court of Alabama.

Oct. 6, 1949.

573

Edwin C. Page, Jr., of Evergreen, for
appellant.

574

B. E. Jones, of Evergreen, McMillan, Caffey & McMillan, of Brewton, and Steiner, Crum & Weil, of Montgomery, for appellees.

LAWSON, Justice.

This was an action for damages for the death of Meredith Mitchell Sanders, appellant's intestate, who died as the result of a fall from a passenger train of the L. & N. R. R. Co. Appellant is the administrator of the estate of the said Sanders, deceased. Appellees are the Louisville & Nashville R. R. Co. and W. E. Walker, who was the conductor of the train upon which Sanders was a passenger at the time he met his death.

At the conclusion of the plaintiff's testimony, the trial court, upon the request of counsel for defendants, gave the following

written charge: "The Court charges the jury that if you believe the evidence in this cause your verdict should be for the defendants." Immediately after giving this charge, the court stated: "Now, Mr. Jones will prepare a verdict and I will ask one of you to sign it as foreman." Mr. Jones was one of the attorneys representing the defendants. The verdict of the jury was: "We, the jury, find in favor of the defendants." Judgment was in accord with the verdict.

■ Such action must be treated as directing a verdict for defendants or as the giving of the general affirmative charge for defendants without hypothesis. O'Bar v. Southern Life & Health Ins. Co., 232 Ala. 459, 168 So. 580; Watts v. Metropolitan Life Ins. Co., 211 Ala. 404, 100 So. 812.

■ The general affirmative charge, without hypothesis, should not be given for a plaintiff having a burden of proof to discharge, and which is sought to be met by parol testimony, for the credibility of the witness is for the jury. Watts v. Metropolitan Life Ins. Co., supra. But when the plaintiff has introduced his evidence, and it does not tend to prove his cause of action, the court may refuse to hear evidence by the defendant, and may direct the verdict. In this connection it was said in O'Bar v. Southern Life Ins. Co., supra, as follows [232 Ala. 459, 168 So. 583]:

"And it is also well settled that where by the undisputed evidence plaintiff has not shown that he is entitled to recover on his complaint, the court may direct a verdict for defendant, and it is immaterial whether the jury believe the evidence or not. In either event plaintiff has not proven his complaint. (Authorities cited.)

"When plaintiff fails to make out his case, there is no prejudicial error in directing a verdict for defendant without written request. (Authorities cited.)"

At approximately 1:20 p. m. on April 10, 1945, members of the crew of an L. & N. freight train which was moving in a northerly direction between Castleberry and Evergreen found the dead body of Sanders lying approximately five or six feet from the west side of the railroad track at a point approximately six and three-fourths miles south of Evergreen.

Sanders had been a passenger on L. & N. passenger train No. 1, which had left Evergreen in a southerly direction at approximately 12:56 p. m. on the day he was killed. He had boarded the train at Bowling Green, Kentucky, where he purchased a ticket to take him to his destination, New Orleans, Louisiana, in which city he made his home.

That Sanders died as a result of injuries received from a fall from the moving train is without question. His back was broken. His left leg just above the ankle was broken and the bone protruded through the skin. There were multiple bruises and abrasions on his face and torso.

■ The degree of care imposed by law, as applicable to this case, is, we think, accurately set forth in the case of Birmingham Ry., Light & Power Co. v. Barrett, 179 Ala. 274, 282, 60 So. 262, 264, in the following language: " * * * (1) Common carriers of passengers are bound, with respect to their undertaking to safely carry them, to exercise the highest degree of care, skill, and diligence, and are liable to passengers for the slightest degree of negligence proximately resulting in injury to them. (2) The 'highest degree' of care, skill, and diligence is a relative term, and means the highest degree required by the law in any case where human safety is at stake, and the highest degree known to the usage and practice of very careful, skillful, and diligent persons engaged in the business of carrying passengers by similar means and agencies. (3) It does not mean that every possible or conceivable care and precaution which might increase, or even assure, the safety of the passenger, must be taken, but only such as are reasonably practicable under the circumstances; i. e. reasonably consistent with the practical operation of the carrier's business." See also Louisville & N. R. Co. v. Bowen, 212 Ala. 690, 103 So. 872; Mosley v. Teche Lines, Inc., 232 Ala. 110, 166 So. 800; Pollard v. Williams, 238 Ala. 391, 191 So. 225; Montgomery City Lines v. Jones, 246 Ala. 291, 20 So.2d 599.

A carrier is not an insurer of the safety of its passengers. Mosley v. Teche Lines, Inc., supra; Pollard v. Williams, supra; Montgomery City Lines v. Jones, supra; Louisville & N. R. Co. v. Maddox, 236 Ala. 594, 183 So. 849, 118 A.L.R. 1318.

It has been stated in some of our cases that as a general rule the fact that a passenger is injured on a carrier's train raises the presumption of negligence and casts upon the carrier the burden of showing that it was not guilty of negligence. See Louisville & N. R. Co. v. Godwin, 183 Ala. 218, 62 So. 768, and cases cited. But it is evident that there are circumstances to which that broad statement has no application; for example, when the plaintiff's evidence shows that his injury could have resulted from some cause outside the ordinary supervision and control of the carrier. Central of Georgia R. Co. v. Robertson, 203 Ala. 358, 83 So. 102; Central of Georgia R. Co. v. Brown, 165 Ala. 493, 51 So. 565. Such is the instant case. We are not concerned here with a statutory provision requiring the carrier to acquit itself of negligence. See § 173, Title 48, Code 1940.

In this case the burden was upon the plaintiff, in consonance with the universal rule of judicial procedure, to reasonably satisfy the jury that the death of his intestate was the proximate result of the negligence of the defendants. Central of Georgia R. Co. v. Brown, supra; Carlisle v. Central of Georgia R. Co., 183 Ala. 195, 62 So. 759.

In directing a verdict for the defendants, the trial court concluded that this burden had not been met by the plaintiff.

In reviewing this action of the trial court, the entire evidence must be considered by us in the light most favorable to the plaintiff and if, when so considered, it appears that a reasonable inference may be drawn substantiating the claimed culpability of the defendants, we must hold that it was error to direct a verdict for the defendants. Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224.

In so far as this record discloses, no one saw the deceased when he left the train or saw where he was at the time he left it or saw what he was doing at that time or knew what caused him to leave the train. Any explanation surrounding the manner and place in which deceased left the moving train and the alleged negligence of the defendants must depend wholly upon circumstantial evidence.

The fact that there was no eyewitness, of course, does not present an insuperable obstacle to plaintiff, if proven circumstances suffice, for it is well established that both the cause of an injury and the question of actionable negligence may be established by circumstantial evidence. Harbin v. Moore, 234 Ala. 266, 175 So. 264; Mobile & O. R. Co. v. Hedgecoth. 215 Ala. 291, 110 So. 44; Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505.

But the circumstances must be proven and not themselves presumed. Cases last above cited.

The evidence viewed in the light most favorable to plaintiff is summarized below.

L. & N. train No. 1, upon which plaintiff's intestate was a passenger on the day he met his death, was made up of eleven cars, including two pullman cars, a diner, and either three or four coaches, the remainder of the eleven cars being either mail, baggage or express cars. One witness said there were four day coaches, while in the answers of the defendant railroad company to interrogatories propounded to it by plaintiff, it is stated that there were three day coaches. The witness who testified that there were four day coaches explained that the passenger cars followed the engine in this order: day coach for colored people, partitioned day coach for white and colored, day coach No. 2507 in which intestate was riding, Pullman, diner, day coach, Pullman. The rear door on the last Pullman, an observation or lounge car, was locked. All the passenger cars were air-conditioned and so constructed that none of the outside windows could be opened. The passenger cars were of the type generally known as vestibule cars; they had platforms at each end, which were designed so that the vestibule could be enclosed, while the train is in motion, by a trap door over the step, with doors at

the side. Each of the vestibule doors had two catches which had to be released before the doors could be opened. The doors swung inboard. The trap door over the steps could not be opened until the vertical door had been opened and swung back against the end of the car. After this is done the trap door can be released from its catch by stepping on a foot pedal. When this is done the trap door is pushed up against the vertical door. A similar reverse process is used in closing the vestibule. On the upper portion of each vestibule door appeared the following warning: "Passengers should not stand on platform and must not open vestibule doors." Plaintiff's evidence as to the effort needed to open the doors of the vestibules is in conflict, but that most favorable to the plaintiff shows that those on the car in which deceased was a passenger were very "hard to undo." The cars had been modernized so as to compare favorably with any railroad passenger car. No defect in the equipment was reported when the cars were inspected in Montgomery a short time before Sanders was killed.

The conductor, flagman, and porters of the train were charged with the duty of keeping the vestibule doors closed. In this connection it was a rule of the railroad company that: "To as great extent as possible, passengers should be kept from riding on platforms of coaches, from opening vestibule doors and from occupying places or doing things which will endanger their safety."

The train as it proceeded southward passed through Montgomery, Greenville, Georgiana, and Evergreen. Although scheduled to stop at each of these cities, the evidence only shows that stops were made at Montgomery and Evergreen. At Evergreen the station is on the east side of the track. The Georgiana station is on the west side of the track but, as before stated, it does not affirmatively appear that the train stopped at that place. Georgiana is only a few miles north of Evergreen.

The track at the point where Sanders left the train was in good shape, level and straight. There was a slight curve approximately one-half mile north, but it is clear that all of the train had passed far beyond the end of the curve at the time Sanders left the train.

Plaintiff's evidence is in conflict as to the speed of the train at the time Sanders was killed. But there is evidence which tends to show that the speed of the train was in excess of seventy-five miles an hour, the speed limit fixed by a rule of the railroad. There is no evidence tending to show any unusual lurching of the train.

■ It is the right of railroads in this state to run trains at any speed that is safe for their passengers and freight, except under the circumstances when statutory precautions are exacted. Central of Georgia R. Co. v. Robertson, 203 Ala. 358, 83 So. 102. It does not appear that any such statutory regulation is applicable in this case.

■ It if be assumed that the defendants were negligent in running the train at a speed in excess of that authorized by the rule of the railroad, that is, at a speed in excess of seventy-five miles an hour but not more than eighty-three miles an hour, at which speed the train would automatically stop, the question remains as to whether a reasonable inference can be drawn from the evidence that the excess speed proximately resulted in the death of plaintiff's intestate. It is axiomatic that for negligence to confer a right of action, it must be the efficient cause of injury. Southern R. Co. v. Crawford, 164 Ala. 178, 51 So. 340; Southern Express Co. v. Roseman, 206 Ala. 681, 91 So. 612; Williams v. Wicker, 235 Ala. 348, 179 So. 250.

■ We are unable to see any connection between the forward motion of the train and Sanders' death unless the evidence tends to show that the speed caused the train to lurch from side to side to such an extent that he crashed through a window or door or fell through an open window or vestibule door. We hold, therefore, that the evidence does not show actionable negligence in so far as the speed of the train is concerned.

Unquestionably Sanders left L. & N. train No. 1 on April 10, 1948, in some manner and as a result he was killed. But how did he leave the train? Since the evidence

tends to show that the windows on the train could not be opened and none of the windows or doors on the train were broken or smashed, the only explanation deducible from the evidence is that he passed through an open doorway.

The evidence is silent as to whether the doors were closed or open shortly prior to the time Sanders was killed.

The railroad company having provided vestibule trains, it was its duty to maintain them in a reasonably safe condition. Bronson v. Oakes, 8 Cir., 76 F. 734; Clanton v. Southern R. Co. et al., 165 Ala. 485, 51 So. 616, 27 L.R.A.,N.S., 253. It was its duty to exercise the highest care to see that the vestibule doors were closed while the train was in motion.

But the evidence in this case does not tend to show that the railroad company did not exercise that care. As before pointed out, the rule in this jurisdiction in a case such as this is that negligence of the defendant cannot be presumed from the mere fact of an injury to the plaintiff.

A vestibule door could have been opened by (1) an employee of defendant; (2) by the act of a third party, who opened it and left it open under circumstances that required the defendants to close it or afforded them an opportunity to do so; (3) by the act of a third party, who opened it and left it open at a time that did not afford defendants an opportunity to close it; (4) by the act of plaintiff's intestate himself.

The first two of these possible causes would entail liability on the part of the defendants, but the last two would not.

As to possible cause (4) mentioned above, we think it well to point out that although there is a rebuttable presumption, to the effect that every person in possession of his normal faculties in a situation known to be dangerous to himself will give heed to instincts of safety and self-preservation and exercise ordinary care for his own personal protection, the negligence of the defendant cannot be inferred from such a presumption. It cannot take the place of evidence as to the negligence of defendant. Atlantic Coast Line R. Co. v. Wetherington, 245 Ala. 313, 16 So.2d 720, and cases cited.

We think the rule as laid down in Southern R. Co. v. Dickson, 211 Ala. 481, 100 So. 665, 669, often followed by this court, is applicable to this case:

" 'Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.'

"But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridicial basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."

The evidence in this case is without selective application to either of the theories of causation and, therefore, they remain conjectures only. The evidence does not point to any one theory of causation indicating a logical sequence of cause and effect. Verdicts may not be rested on speculation or conjecture. Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505.

We have given careful consideration to all the evidence in this case, in connection with the cases from other jurisdictions cited by counsel for appellant. Most of them are distinguishable from the facts of this case in that the evidence in those cases tended to show that the vestibule doors were left open by the employees of the railroad company. But there is no such evidence in this case. Regardless of the out-of-state decisions, we are clear to the conclusion that the learned trial court acted in accordance with the

rules of this jurisdiction in directing a verdict for the defendants.

The judgment of the trial court is affirmed.

Affirmed.

BROWN, FOSTER, and SIMPSON, JJ., concur.