## MEMPHIS ST. RY. C. v. BROWN.—260 S. W. (2d) 401.

Western Section. June 19, 1952.

Petition for Certiorari denied by Supreme Court, October 10, 1952.

George T. Lewis, Jr., of Memphis, for plaintiff in error.

W. C. Rodgers, of Memphis, for defendant in error.

ANDERSON, P. J.   The Memphis Street Railway Company operates a transportation system in the City of Memphis.   Its vehicles are trackless coaches, powered by electricity from an overhead wire.   Mrs. Brown claims that she was injured while a passenger on one of these coaches, and she gained a jury verdict and judgment for damages.   The defendant appealed in error.   The declaration is in one count.   It charges that at the time the plaintiff sustained her injuries, ''the coach was being operated on Madison Avenue at or near the intersection of Fourth Street, in the City of Memphis, when the defendant's motorman suddenly stopped and/or swerved the coach to the left, apparently for the purpose of avoiding or attempting to avoid an automobile approaching on Fourth Street from the north, and this without any previous warning to plaintiff, throwing her off her balance, while she was standing holding to an upright

rod provided for this purpose for passengers who have to stand, which was the status of this plaintiff, there being no available seat for her; that in so maneuvering said coach it jerked or wrenched plaintiff's right arm or shoulder.'' There follows a description of the injuries complained of, as to the nature and extent of which there is no controversy.

The only charge of negligence is in the following language:

"She would show that the defendant, its agent or operator of the coach, aforesaid, was negligent in suddenly and without warning stopping and/or swerving or maneuvering said coach so as to throw plaintiff off her feet and balance and against said rod, seats'', etc.

Plaintiff was the only witness to the facts of the accident, which she alleges occurred on May 4, 1950. She did not call it to the attention of the motorman, or anyone else, at the time, and in fact did not make any report of it at all to the company until July 1, 1950. She was not treated by a physician until June 9, 1950. Up until that date she was content to treat herself with home remedies.

Since the defendant did not know prior to July 1, 1950, that there had been an accident, it was laboring under a considerable handicap in preparing its defense. It could locate no employee who knew that an accident had occurred. It moved the Court to require the plaintiff to make her declaration more specific by furnishing it with information which would enable it to identify the coach and the operator in charge at the time, as well as the time of day at which the accident occurred. Plaintiff responded by averring that the operator was "a slender, dark complexioned man, appearing to her to be around 35 or 40 years of age, according to her best recollection,

and that the accident occurred between 1:00 and 2:00 o'clock p. m. on March 4, 1950''.

With this information in hand, the defendant produced its records, showing its various operators who would have passed the intersection in question between the hours of 1:00 and 2:00 p. m. on that day. All testified that they knew of no such occurrence as that described by the plaintiff, and the plaintiff was unable to identify any of the operators as being the one in charge of the coach at the time of the accident. Hence so far as the testimony of witnesses is concerned, the defendant's defense was necessarily altogether negative in character.

But, for the purposes of this appeal, the accident must be taken to have occurred as testified to by the plaintiff. The coach was traveling west on Madison Avenue, which is intersected by Fourth Street. There is a stopsign on Fourth Street, indicating that those entering Madison Avenue from the north should stop before doing so. At the time of the accident plaintiff was standing in the coach, grasping one of the upright rods provided for standing passengers to hold on to. She testified that as the coach approached Fourth Street, ''all of a sudden he came to a stop and I was standing, holding this upright and it threw my shoulder against the upright and he didn't stop dead still, he just checked his speed and then he swerved the bus around this car and that jerked me again, jerked my body away from the upright and I was still holding on with my hand to keep from falling''.

Plaintiff was not thrown to the floor, and so far as appears, no other passenger was injured by the maneuver. In fact, it was not even noticed by any one else so far as appears. On cross-examination, the plaintiff said that when she first saw it, the automobile which came from the north out of Fourth Street into the intersection

was "about half out into Madison Avenue", that is, about half the length of the car was south of the north curb of Madison, and that it had come to a standstill. She further testified that at that time the coach "was running along about where it was supposed to, on the right hand side of the street going down town", and that it "swerved far enough to miss the car", referring to the car which had partly entered the intersection from Madison Avenue; that "* * * I know he had to avoid hitting this car by almost a sudden stop and then he swerved around it". She said she did not speak to any other of the passengers about having been hurt, nor to the motorman, nor did she mention to any one the unusual movement of the vehicle. She was asked, "Did anyone else on the bus call the incident to the attention of the operator?" and she replied, "No, they did not. They just swerved and swung around like I did and he went on".

Elsewhere the plaintiff testified that, "Yes, sir, he had to dodge it, he had to swerve around it", referring to the car which had come into the intersection from Fourth Street.

There was no charge in the declaration and no evidence that the coach was being operated at an excessive rate of speed and no charge and no evidence that the operator was not properly on the lookout ahead, or that he did not have the coach under control. In fact, there was no charge that he improperly performed or failed to perform his duty in any other particular respect.

It seems to be the plaintiff's contention that from her mere statement that the movement was a sudden one, it was permissible to draw an inference of negligence which shifted to the defendant the burden of showing the contrary.

■■   The rule plaintiff apparently has in mind does not apply to the facts of this case. Where a passenger on a common carrier is not disembarking or about to disembark at what he has reason to believe is a stop for that purpose, or is not in the act of boarding the carrier's vehicle, the mere fact, without more, that an injury is caused by a sudden jerk, jolt or movement of the vehicle does not justify an inference of negligence unless it is shown that the movement was of an unusual or extraordinary nature, and the burden is on the plaintiff to prove that fact. 13 C. J. S., Carriers, Sec. 764, p. 1462; cf. Nashville C. & St. L. Ry. v. Akin, 140 Tenn. 34, 203 S. W. 329.

In other words, an inference of negligence in such cases ''arises only when the jerk or lurch is shown to be extraordinary so as to be attributable to unskillful handling of the train or other fault of the carrier. Jerks, jolts, and lurches, according to common knowledge, occur in the ordinary nonnegligent operation and stopping of a train of a commercial railway.'' Nashville, C. & St. L. Ry. v. Akin, supra. This is even truer in the case of a coach of the kind here in question, operating through the traffic of a large city.

■   There is no claim that the plaintiff was preparing to disembark at a regular stop. There was no testimony whatever as to the nature of the movement of the vehicle —that is, whether it was extraordinary or unusual, except the conclusion of the plaintiff that the slowing down of the coach was ''sudden'', and that ''then he swerved the bus around this car''. This was not sufficient to justify an inference of negligence, because, as said, it is a matter of common knowledge that such movements occur when ''in the ordinary non-negligent operation'' of a coach under traffic conditions obtaining in the cities,

especially whether the vehicles are obliged to approach the curb at designated points to take on and discharge passengers.

It has been held in a number of cases that the words "sudden", "violent" and "unusual", employed by an injured plaintiff in describing the movements of a street-car, or railroad train, are not sufficient without more to establish the basis for an inference of negligence under the rule above referred to. McGann v. Boston Elevated Railroad, 199 Mass. 446, 85 N. E. 570, 18 L. R. A., N. S., 506, 127 Am. St. Rep. 509; Anderson v. Boston Elevated Railroad, 220 Mass. 28, 107 N. E. 376; Weinschenk v. New York, N. H. & H. Railroad, 190 Mass. 250, 76 N. E. 662; Bray v. Boston Elevated Railway, 303 Mass. 379, 21 N. E. (2d) 957; Seidenberg v. Eastern Mass. Street Railway, 266 Mass. 540, 165 N. E. 658, 659. The same rule has been applied in the case of a passenger injured while riding in a taxicab operating for hire. Conley v. Town Taxi, Inc., 298 Mass. 130, 10 N. E. (2d) 74.

But for another reason the movement of the vehicle described by the plaintiff does not justify an inference of negligence. This is because the only conclusion reasonably possible was that, more likely than not, the movement of the vehicle was reasonably necessary to avoid striking the automobile which was extended partly into the intersection. This was not only plaintiff's testimony but the averment of her declaration. In such a case an inference of negligence is not justified from a "sudden movement" or a "sudden stopping". Robinson v. Connecticut Co., 122 Conn. 300, 189 A. 453; Conley v. Town Taxi, Inc., supra; and cf. Cannon v. Louisville & N. R. Co., 252 Ala. 571, 42 So. (2d) 340.

In this connection it must be borne in mind that, as said, there was no pleading and no evidence that the

coach was being operated at an excessive or improper rate of speed, or that the operator was not on the proper lookout ahead, or did not have the coach under proper control. In this situation it cannot be presumed that the emergency created by the presence of the other car was attributable in whole or in part to the fault of the defendant's operator, for that would be to presume negligence without evidence. The rule, recognized as sound by our Supreme Court many times, is "that if personal injury made, on the proof adduced, be due either to a negligence or to a nonnegligent cause, a defendant may not be held to respond in the absence of any proof referring the injury to his negligence as the producing cause." Nashville, C. & St. L. Ry. Co. v. Akin, supra; see Cannon v. Louisville & N. R. Co., 252 Ala. 571, 42 So. (2d) 340.

The plaintiff refers us to three cases, which she cites with confidence. These are Southern Coach Lines v. Haddock, 29 Tenn. App. 132, 194 S. W. (2d) 347; Tennessee Coach Co. v. Young, 18 Tenn. App. 592, 80 S. W. (2d) 107; and Duling v. Burnett, 22 Tenn. App. 522, 124 S. W. (2d) 294. Neither is in point on the facts.

The first involved an injury to a passenger for hire in one of the defendant's buses when she was thrown from her seat as the driver came to a sudden stop in order to avoid colliding with an ambulance at a street intersection. The declaration charged that the bus driver was guilty of negligence in failing to maintain a proper lookout for traffic as he approached the intersection. There was evidence to sustain this charge. In the present case there is no such averment in the declaration and no such evidence.

The second case also involved an injury sustained by a passenger for hire in a bus owned by the defendant as a

result of the vehicle's skidding and overturning when the driver suddenly applied the brakes to avoid hitting a mule that ran across the highway. There was evidence to show that the bus was being driven at a fast and dangerous rate of speed over a wet and slippery road, and that the operator could have seen the mule in time to stop if he had been driving at a proper rate of speed, having due regard to the atmospheric conditions. There was no such evidence in the present case.

We perceive no theory of the case of Duling v. Burnett under which it could be said that it had any relation whatever to the present case, and hence it is not worthwhile to discuss that decision.

The result is, the judgment is reversed and the motion for a directed verdict is sustained and the suit dismissed. The costs of the cause, including the cost of the appeal, are adjudged against the plaintiff, Mrs. Brown.

Baptist and Swepston, JJ., concur.