244 So.2d 591

**DIXIE HIGHWAY EXPRESS, INC., Jack Cole Company and Howard H. Baskin**

**v.**

**SOUTHERN RAILWAY COMPANY, a Corporation.**

**6 Div. 759.**

Supreme Court of Alabama.

Jan. 14, 1971.

Rehearing Denied Feb. 25, 1971.

Huie, Fernambucq & Stewart, Birmingham, for appellants.

Cabaniss, Johnston, Gardner & Clark, and Drayton Nabers, Jr., Birmingham, for appellee.

HARWOOD, Justice.

When a trailer truck was observed partially blocking the railroad track at a crossing in York, Alabama, the engineer applied the emergency brakes. As a result of this drastic slowing of the train, several freight cars were derailed. The Southern Railroad filed suit for damages against the two trucking companies, and their employee, Baskin, the driver of the truck.

A verdict was returned in favor of the plaintiff railroad and damages were fixed at $20,000. Judgment was entered pursuant to the verdict. The defendants' motion for a new trial being overruled, they perfected this appeal.

Only two points are argued on this appeal. One relates to the refusal of a "falsus in uno, falsus in omnibus" charge requested by the defendants, and the second relates to the refusal of charges pertaining to contributory negligence.

The evidence tends to show that Baskin, the employee of the corporate trucking companies, had picked up a load of paper from a plant located south of the railroad. The road to the plant leads off from Highway 11, and after a short distance crosses the railroad, then turns at right angles and parallels the railroad tracks. As Baskin neared the crossing, he stopped and permitted an automobile and a pickup truck to proceed ahead of him. These two vehicles crossed the tracks but because of the heavy traffic on Highway 11, the automobile was unable to enter Highway 11. The pickup truck was stopped behind the automobile thus taking up most of the road between the track and the highway.

Baskin waited for some five minutes for the two preceding vehicles to proceed on. Then Baskin, because he "had a schedule to run" drove the truck up behind the pickup truck. In this position the rear part of the trailer of the truck, which was some fifty feet long, protruded some three to six feet over the railroad track. From the cab of the truck Baskin could see approximately one half mile down the track at which point it curved out of sight. The windows of the cab were up. He was familiar with

this crossing, and knew that the track was a main line track of the railroad.

The truck remained in this position for two or three minutes when he noticed a woman in the pickup truck making a "face" at him. He looked up the tracks toward the curve and saw a train approaching, the train having then cleared the curve by approximately a quarter of a mile.

At this time the lead automobile entered Highway 11, the pickup truck moved forward, and Baskin, angling to the right of the pickup truck, was able to move the rear of the trailer off the track so that the train cleared it by one or two feet.

Leo S. Love, engineer of the train, testified that it was some 233 cars in length, each car being 50 feet long. As he entered the curve prior to reaching the crossing, he started blowing the whistle of the engine, and ringing the bell. The speed of the train in the curve was 48 miles per hour, the speed restriction on the curve being 55 to 60 miles per hour. When the engine was sufficiently around the curve to where he could see the straightaway, he saw a truck trailer on the track. The distance was some 35 car lengths, or 1750 feet. Before emerging from the curve, he had blown the prescribed road crossing whistle, and the bell had been started before the whistle was blown. The bell rings continuously when turned on. He observed the truck for approximately 10 car lengths, and it did not appear to move. He thereupon put the train on emergency brakes.

It appears when operating air brakes on trains the air pressure is raised in the braking system to around seventy-five pounds. This pressure releases the brakes on the wheels of each car. As the pressure is lowered the brakes begin to function. The rate of slowing is determined by the amount of air released in using the braking system. When the brakes are applied in emergency the air is released instantaneously and full braking of the whole train results. The brakes cannot then be released until the train is stopped and sufficient air is again pumped into the system.

Mr. Love testified that emergency braking is not lightly employed, only in an emergency, as there is danger of the train jackknifing because of the slack action in a train of cars. In a normal braking such slack action is controlled by gradual braking and using the engine throttle. There is no more risk in using a service application of brakes in a long train than in a short one.

There is no quicker way of stopping a train than by the application of emergency brakes.

Mr. Love further testified that for the past five or six years the length of a train of 233 cars is usual, the length of a train being governed and limited only by the power of the engine.

Mr. Love was cross-examined extensively, as were the other members of the train crew, i.e., the fireman and the conductor. The testimony of the crewmen was materially the same as that of Mr. Love.

This cross-examination elicited testimony to the effect that there is greater slack action in a long train than in a short train; that had the train been slowed to 24 miles per hour instead of the 48 miles per hour it was traveling as it entered the curve, the train would not have been as apt to have a derailment from a bunching of the cars.

After applying the emergency brakes, Mr. Love left his seat and got onto the deck of the engine where he braced himself for a collision. The other crew members left the engine at this time going to units back of the engine. When he realized that the crossing had been passed without a collision, Mr. Love resumed his seat, and looked back. The truck was just off the track, and later drove off toward Meridian, Mississippi. The engine of the train went some 1100 feet beyond the crossing before it stopped.

J. E. Clelland, fireman on the train, testified that a part of his duties was to keep a lookout. He saw the trailer on the track as they came out of the curve. As he observed the truck it did not appear that there was room for it to get off the track. Due to his position in the engine, he could have seen the truck one or two seconds before the engineer would see it. There was no conversation between him and the engineer as to the truck. The engineer placed the engine in emergency brakes, and Mr. Clelland started for the rear units.

■ Assignment No. 8 asserts as error the refusal of charge No. 3 requested in writing by the appellants, defendants below. This charge reads:

"I charge you, ladies and gentlemen of the jury, that if you are reasonably satisfied that any one of the witnesses or parties wilfully testified falsely about a material fact then you may disregard such testimony in whole or in part within your sound discretion."

The charge has been criticized, and its validity questioned in several of our opinions. See Williams v. Palmer, 277 Ala. 188, 168 So.2d 220, though in Independent Life & Accident Ins. Co., etc. v. McGehee, 284 Ala. 394, 225 So.2d 805, its refusal was one of the bases of reversal of the judgment involved in that case.

In Beavers v. Boykin, 273 Ala. 413, 142 So.2d 10, this court stated that prevailing attitude of the courts towards "falsus in uno, falsus in omnibus" charges was one of tolerance and sufferance.

But no need arises to belabor the question of the inherent invalidity of a well stated "falsus in uno" charge. The charge herein involved is faulty on its face in that it is misleading.

In effect the charge instructs the jury that if they were reasonably satisfied that any of the witnesses or parties wilfully testified falsely about a material fact then the jury could "disregard such testimony in whole or in part" within their sound discretion. In other words the jury might disregard (or regard) such false testimony in their sound discretion. No discretion should be allowed a jury to consider and give weight to wilfully false testimony on a material point, even in part.

The usual form of a falsus in uno charge is that if the jury is reasonably satisfied that a witness has wilfully testified falsely about a material fact, then the jury might, in its discretion, disregard such witness' testimony in its entirety.

No error therefore resulted from the refusal of defendants' written requested charge No. 3.

■ In support of the contention that the court erred in refusing the charges relative to contributory negligence, counsel argues that since the derailment was caused by bunching of the cars due to the sudden taking up of the slack action of the train upon the application of the emergency brakes, the railroad employees were negligent in (1) entering the curve at a speed of 48 miles per hour, when if they had entered the curve at a lesser speed, the train could probably have been stopped before reaching the crossing, (2) the railroad witnesses admitted that the slack action is greater in a train of 233 cars than in a shorter train of 100 cars, (3) the braking system on some of the cars has been the same since 1938, (4) that slack action is more severe when there are loaded cars behind empty cars, as was the situation with this train, and (5) a jury could well find negligence from the operation of a train of the length of the train herein involved.

As to the speed of the train entering the curve, the evidence shows that the limitation of the speed on this curve was 55 to 60 miles per hour. The evidence is undisputed that the train traveled on the curve at a speed of 48 miles per hour.

■ Railroads have the right to operate trains at any speed that is safe for passengers and freight, except where statutory

limits are exacted. Cannon v. Louisville & N. R. Co., 252 Ala. 571, 42 So.2d 340.

As to the fact that there is more slack action in a longer train than in a shorter one, and that slack action is severe when loaded cars are placed behind empty ones in a train, such facts merely state basic physical laws. We cannot see that any negligence can be inferred from a mere statement of such facts when evidence tending to demonstrate negligence from such conditions is totally lacking.

Nor can any negligence be inferred merely from the fact that the braking systems on some of the cars were the same as they had been since 1938. There was no showing by the appellant that such braking system was inefficient. In fact witnesses for the railroad testified that the braking systems placed on 1938 cars were the basic braking systems applied to cars today.

In the absence of evidence to the contrary, we do not think that negligence can be inferred merely from the length of a train. With the increase in the power of engines, it is customary to operate trains of the length of the train involved in this derailment. Mr. Love testified that in normal operations slack action is controlled by gradual braking and using the engine throttle, and that there is no more risk in using a service application of brakes on a long train than on a short one.

We find no basis from the evidence of inferring even a scintilla of negligence on the part of the railroad in the operation of this train. This in itself would justify a refusal of the contributory negligence charges.

We conclude further that error should not be cast upon the trial court in refusing the contributory negligence charges because of a colloquy between the court and appellants' counsel.

The complaint as amended contained two counts based on the alleged negligence of the appellants.

In the trial below the plaintiff offered in evidence the deposition of Mr. Baskin, one of the defendants, and one of the appellants here. This deposition, some 43 pages in length, was read to the jury. The plaintiff then presented as a witness Mr. Love, the engineer. His direct examination was lengthy. The cross-examination was extensive and during this cross-examination the record shows the following:

"MR. ALLEY: We again object to the whole line of testimony, Judge. That doesn't have anything to do with the issues in this case.

"THE COURT: I don't think it does either.

"MR. STEWART: It does as to the proximate cause in the operation. It's the whole issue in the lawsuit.

"THE COURT: Are you talking about contributory negligence or something?

"MR. STEWART: I have not used the word, Judge. I'm talking about proximate cause, Your Honor. And we have before us the jury to determine the direct proximate cause.

"THE COURT: I don't understand your line of questioning, because we have no plea of contributory negligence in this case.

"MR. STEWART: I haven't used the word.

"THE COURT: What's that?

"MR. STEWART: I have not used the term, Judge—

"THE COURT: What—

"MR. STEWART:—that your're referring to. I haven't even mentioned it."

The court's observation that "we have no plea of contributory negligence in this case" was not correct in that a plea of the general issue in short by consent, etc., would include a plea of contributory negligence since both counts sounded in negli-

gence only. Wilhite v. Webb, 253 Ala. 606, 46 So.2d 414; Barfield v. Wright, 286 Ala. 402, 240 So.2d 593. However, we consider this probably inadvertent statement insignificant in considering the colloquy as a whole. We do not know why counsel for the appellants was loathe to pronounce the words "contributory negligence" and treated the term as though it might be obscene  Nevertheless, counsel's statements would reasonably indicate a disclaimer of contributory negligence as an issue in the case.

 A party may not avail himself of error into which he has led or lulled the trial court. Ellerbee v. Atlantic Coast Line R. Co., 258 Ala. 76, 61 So.2d 89; Aetna Life Ins. Co. v. Beasley, 272 Ala. 153, 130 So.2d 178; Thompson v. Magic City Trucking Service, 275 Ala. 291, 154 So.2d 306. Nor will a case be reviewed on a theory different from that on which it was tried. Ellerbee v. Atlantic Coast Line R. Co., supra, and cases cited therein.

Affirmed.

MERRILL, MADDOX and McCALL, JJ., concur.

LAWSON, J., concurs in result.