897 So.2d 349 (2005)
Heidi Gayle Holcomb REID
v.
Eric Jason REID.
2030406.
Court of Civil Appeals of Alabama.
September 17, 2004.
*350 Judith S. Crittenden and Traci Owen Vella of The Crittenden Law Firm, Birmingham, for appellant.
Submitted on appellant's brief only.
THOMPSON, Judge.
This is the second time these parties have been before this court.
*351 On June 26, 2000, the trial court entered a judgment divorcing Heidi Gayle Holcomb Reid ("the mother") from Eric Jason Reid ("the father"). The mother was awarded custody of the child born of the parties' marriage.
On October 22, 2001, the father petitioned to modify custody. The mother answered and counterpetitioned, seeking, among other things, a modification of the father's visitation with the child and a modification of the father's child-support obligation. After conducting an ore tenus hearing, the trial court entered an order on December 18, 2001, that, among other things, awarded custody of the child to the father. In that order, however, the trial court reserved consideration of the issues of child support and the division of the proceeds of a settlement of a legal action. The mother appealed, and on September 6, 2002, this court dismissed the mother's appeal as having been taken from a nonfinal judgment. Reid v. Reid, 844 So.2d 1212 (Ala.Civ.App.2002) ("Reid I").
On remand, the mother, on August 12, 2003, filed a pleading entitled "Amendment to Counterclaim," in which she alleged a material change in circumstances and in which she sought a "modification" of the trial court's December 18, 2001, order awarding custody of the child to the father (hereinafter "the mother's petition to modify"). The trial court originally scheduled a hearing on the mother's petition to modify for December 4, 2003, but it rescheduled that hearing for October 23, 2003. On October 23, 2003, the trial court conducted an ore tenus hearing on the mother's petition to modify; the father did not appear for that hearing. On October 24, 2003, the trial court entered an order that, among other things, awarded custody of the child to the mother.
On November 3, 2003, the father moved the trial court to vacate its October 24, 2003, order based on his allegation that he had not received notice of the October 23, 2003, hearing date. The trial court conducted an ore tenus hearing on the father's motion to vacate. On November 10, 2003, the trial court entered an order vacating its October 24, 2003, order and rescheduling a final hearing on the merits. After the trial court conducted a final hearing over the course of two days in January 2004, it entered a judgment in which it awarded custody of the child to the father. The mother appealed.
The mother contends on appeal that the trial court erred in setting aside its October 24, 2003, order that had awarded her custody of the child. The mother contends that the father failed to present sufficient evidence to demonstrate that he did not receive notice of the October 23, 2003, hearing. The following facts are derived from the evidence presented at the hearing on the father's motion to vacate the October 24, 2003, order.
The father testified that he received notice of the mother's August 12, 2003, petition to modify together with a scheduling order that indicated that the trial court had scheduled a hearing on the mother's petition for December 4, 2003. The father testified that upon receiving those documents he went to see the attorney who had represented him in the proceedings on his 2001 petition to modify custody; that attorney (hereinafter sometimes referred to as "the father's former attorney") had withdrawn from representing the father during the mother's first appeal to this court. The father testified that, after his former attorney told him how much his representation of the father would cost, he informed the former attorney that he would be back to see him.
In late September 2003, the trial court clerk's office sent a notice to the father's *352 former attorney notifying him of the December 4, 2003, hearing. The father's former attorney returned the scheduling notice to the clerk's office with a letter explaining that he did not, at that time, represent the father. On October 2, 2003, the day after the clerk's office received the returned scheduling notice from the father's former attorney, someone in the clerk's office mailed that scheduling notice to the father.
It appears, however, that the trial court entered an order rescheduling the hearing on the mother's petition to modify to October 23, 2003. The evidence at the hearing on the father's motion to vacate indicated that the new scheduling notice was stamped to indicate that it had been filed with the trial court clerk and placed in the court file on September 30, 2003. However, even at the time of the November 2003 hearing on the father's motion to vacate the October 24, 2003, order, neither the handwritten case-action summary nor the computer-generated case-action summary contained a notation indicating that the new scheduling order had been filed in the trial court clerk's office.
The record indicates that the mother's attorney attempted to serve the father with a copy of the notice rescheduling the hearing to October 23, 2003, by certified mail; the return address on the certified letter indicated that the letter had been sent by the trial court clerk. According to the father, on approximately October 1, 2003, he was in the process of changing residences when he received a notice in his mailbox indicating that he had received a certified letter that could be retrieved from the post office. The certified-mail notice indicated that the letter was from the trial court clerk. Rather than retrieving the certified letter, on October 2, 2003, the father called the trial court clerk. The trial court clerk testified that he recalled speaking with the father and that he informed the father that the hearing was scheduled for December 4, 2003. The trial court clerk testified that he based that representation on his referencing the computer-generated case-action summary. According to the father, the trial court clerk indicated that he would send the father another notice through regular mail. The clerk did not remember making that statement. Shortly after his October 2, 2003, conversion with the trial court clerk, however, the father received, through regular mail, the scheduling order sent on October 2, 2003, by the trial court clerk's office; that scheduling order, which had been returned to the clerk's office by the father's former attorney, indicated that the hearing was scheduled for December 4, 2003.
The father never retrieved the certified letter from the post office, and that certified letter was returned, unopened, to the trial court clerk's office. The record indicates that after the father was served with a copy of the October 24, 2003, order, he went to the trial court clerk's office and opened the certified letter. It is undisputed that that certified letter contained a scheduling notice indicating that the hearing was to be conducted on October 23, 2003.
On October 7, 2003, the mother's attorney had the father personally served, purportedly with notice of the October 23, 2003, hearing. The father did not deny that he had been personally served with notice of a hearing on October 7, 2003. The father testified, however, that the notice he received from the sheriff on October 7, 2003, was another notice for the December 4, 2003, hearing. The father submitted the summons and scheduling notice he received on October 7, 2003, into evidence; the witnesses who examined that summons and scheduling notice *353 agreed that it did not appear that the staple attaching the summons to the scheduling notice indicating that a hearing would be conducted on December 4, 2003, had been removed. The file copy for the October 7, 2003, service indicated, however, that the sheriff had given the father notice of the October 23, 2003, hearing. The mother presented the testimony of an employee of the clerk's office who insisted that she had not mistakenly attached the wrong notice to the summons the sheriff gave the father on October 7, 2003; the employee acknowledged, however, that it was possible that a mistake had occurred.
The mother cites Wright v. Rogers, 435 So.2d 90 (Ala.Civ.App.1983), in support of her argument that the father did not present sufficient evidence to justify the trial court's decision to set aside the October 24, 2003, order. In Wright v. Rogers, supra, the defendant's wife was served with notice of an action against the defendant; the defendant testified that he had not seen the summons or complaint and that he had not given his wife authority to accept service on his behalf. The trial court denied the defendant's motion to set aside the default judgment it had entered in the action. This court reversed the trial court's judgment, concluding that the dispositive issue was one of personal jurisdiction, not one of actual notice of the action. In so holding, this court noted that "[t]he sheriff's return is prima facie evidence of the fact of personal service of process. The party challenging it carries the burden of establishing lack of service by clear and convincing proof." Wright v. Rogers, 435 So.2d at 91.
In Nolan v. Nolan, 429 So.2d 596 (Ala.Civ.App.1982), the trial court entered a judgment in favor of the husband after the wife failed to appear for a hearing. The wife moved to set aside that judgment and presented evidence calling into question whether she had been served with notice of the proceeding. The trial court set aside the judgment, and the husband appealed. This court affirmed the trial court's judgment, noting that the wife had presented "`corroborating evidence,'" that, "if believed, [was] sufficient to corroborate her disclaimer of the service of process upon her." Nolan v. Nolan, 429 So.2d at 598.
In this case, the mother contends that the father did not present clear and convincing evidence that he was not served with notice of the October 23, 2003, hearing. See Wright v. Rogers, supra. However, the father did not assert that he was not served with notice of a hearing. Rather, he contended that the notice with which he was served contained an incorrect date for the hearing on the mother's petition to modify. This court has held that "[a] variance between an original notice and a copy served upon the [receiving party] will affect the service if the variance is such as would likely mislead the [receiving party] as to the object of the proceedings." Hayes v. Hayes, 472 So.2d 646, 648 (Ala.Civ.App.1985).
The mother, in her brief on appeal, focuses only on the fact that the father could have retrieved the certified letter, but chose not to do so, and the fact that the employee of the clerk's office insisted she had not made a mistake in attaching the scheduling notice to the October 7, 2003, summons that was personally served upon the father. The father, however, presented a great deal of evidence tending to support his allegation that he received notices by regular mail and through personal service only of the December 4, 2003, scheduled hearing date. The evidence also supports a conclusion that there was some irregularity with regard to the notice the father received in the certified letter. The certified letter, although mailed by the *354 mother's attorney, contained a return address indicating that it was from the trial court clerk. Although the father did not retrieve the certified letter, upon learning of it, the father contacted the trial court clerk to inquire about the date of the scheduled hearing. Thus, the evidence supports a conclusion that the father's reliance on the trial court clerk's assurance that the hearing was scheduled for December 4, 2003, was reasonable under the facts of this case. The evidence in the record supports a conclusion that the original notice varied from the copies of the scheduling notices served upon the father. See Hayes v. Hayes, supra. Given the circumstances set forth in the record, we cannot say that the trial court erred in setting aside the October 24, 2003, order.
The mother also argues that the trial court's judgment impermissibly shifted the burden of proof to her. In its judgment, the trial court found, among other things, that the father had met his burden of proof in support of his 2001 petition to modify custody but that the mother had not met her burden of proof in support of her 2003 petition to modify. The mother argues that although she filed a petition to modify the trial court's December 18, 2001, nonfinal order, the burden of proving that a modification of custody was warranted did not rest with her but, instead, remained with the father.
The June 26, 2000, divorce judgment awarded custody of the child to the mother. Therefore, it is clear that the father, in seeking to modify that award of custody, was required to meet the burden established in Ex parte McLendon, 455 So.2d 863 (Ala.1984). See Smith v. Smith, 865 So.2d 1207, 1210 (Ala.Civ.App.2003) (where a party seeks a modification of a prior custody award, the appropriate standard to apply is the McLendon standard). Under the McLendon standard, a parent seeking to modify custody must demonstrate that a change in custody will materially promote the best interests of the child and that the change in custody will more than offset the inherently disruptive effects of the custody transfer. Ex parte McLendon, supra. In its December 18, 2001, order, the trial court determined that the father had met that burden. However, this court, in Reid I, supra, held that the December 18, 2001, order was not a final judgment that would support an appeal. The mother contends that because the December 18, 2001, order was nonfinal, the burden of proving that a modification of custody of the child was warranted remained with the father.
In Sims v. Sims, 515 So.2d 1 (Ala.Civ.App.1987), the mother was awarded custody of the parties' child pursuant to their divorce judgment. The father later petitioned for a modification of custody. The trial court awarded the father custody of the parties' child pending a final custody determination, and, after conducting a final hearing, the trial court entered a judgment awarding custody of the child to the father. In reaching that judgment, the trial court determined that the mother was required to meet the McLendon standard. The mother appealed. This court discussed the difference between an award of temporary custody and an award of pendente lite custody and concluded that an award of pendente lite custody did not operate to shift the burden of proof a party seeking custody must meet in a custody-modification proceeding. Sims v. Sims, 515 So.2d at 3. This court reversed the trial court's judgment and held that the father in that case had been awarded only pendente lite custody and that the father was still required to meet the McLendon standard in seeking to modify the custody provision in the divorce judgment. Id.
*355 A pendente lite order is one entered during the pendency of litigation, and such an order is generally replaced by a final judgment. Barber v. Moore, [Ms. 2030038, April 30, 2004] ___ So.2d ___ (Ala.Civ.App.2004). Also, a pendente lite order does not constitute a final judgment and will not support an appeal. Sims v. Sims, 515 So.2d at 2.
It is clear from comments made by the trial court that the trial court intended that the December 18, 2001, order be a final order with regard to the custody of the child. However, the December 18, 2001, custody order was entered pending the resolution of other issues that the trial court did not address in that order. See Barber v. Moore, supra. Also, this court concluded in Reid I, supra, that the December 18, 2001, order was not a final judgment and would not support an appeal. See Sims v. Sims, supra. The entire December 18, 2001, order, and not merely the part reserving for a later date the consideration of the other issues presented to the trial court, was nonfinal. Therefore, we conclude that the December 18, 2001, custody order, because it did not constitute a final judgment, was similar to or in the nature of a pendente lite order.
On remand, the mother, on August 12, 2003, filed a purported "petition to modify" the trial court's December 18, 2001, order; in that petition, the mother alleged that there had been a change of circumstances such that a modification of the December 18, 2001, order was justified under the McLendon standard. However, "as a matter of law ... pendente lite orders [such as the December 18, 2001, order] ... do not activate the McLendon [standard]." Sims v. Sims, 515 So.2d at 3. We note that at the hearing the trial court conducted on the mother's petition to modify, the mother argued that in spite of the allegations in her petition the burden of proving that a modification of custody was warranted remained with the father.
The facts of this case are similar to those of Sims v. Sims, supra. Although in its December 18, 2001, order, the trial court did not specifically award the father custody "pending a final determination of the case," see Sims v. Sims, 515 So.2d at 1, the trial court's December 18, 2001, nonfinal order did not constitute a final determination of the issues, including custody, that were in dispute between the parties. The initial custody orders in both this case and in Sims v. Sims, supra, were pendente lite orders that did not work to transfer the burden of proof for a modification of custody. In this case, as in Sims v. Sims, supra, the father retained the burden of meeting the McLendon standard in seeking to modify custody from the mother.
The trial court's judgment indicates that it incorrectly determined that the mother had the burden of proof in regaining custody of the child after the December 18, 2001, order awarding custody of the child to the father. Therefore, we must reverse the trial court's judgment as to the issue of custody. On remand, the trial court should consider the evidence already presented to it at the hearings conducted during the pendency of this case. Based on all of that evidence, the trial court must determine whether the father established, pursuant to the McLendon standard, that a change in custody was warranted under the facts of this case.
The mother's request for an attorney fee is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., concurs.
CRAWLEY, J., concurs specially, with writing.
PITTMAN and MURDOCK, JJ., concur in the result, without writing.
*356 CRAWLEY, Judge, concurring specially.
Although I agree that the trial court's custody judgment must be reversed and the cause remanded, I believe it is necessary to point out to the trial court that its determination whether the father met the standard imposed by Ex parte McLendon, 455 So.2d 863 (Ala.1984), is not confined to whether the father met that standard in 2001, as the trial court's January 2004 judgment indicated that the father did in 2001. Instead, based upon all the evidence presented throughout the pendency of this case, the trial court must determine whether the father met the Ex parte McLendon standard in January 2004.