THOMPSON, Presiding Judge.
Michael J. Bedard ("the husband") appeals from a judgment of the Madison Circuit Court ("the trial court") divorcing him from Sharon Bedard ("the wife"). In the judgment, among other things not relevant to this appeal, the trial court divided the parties' marital property, awarded the wife sole physical custody of the parties' child ("the child") subject to the husband's visitation, and found the husband in contempt for his failure to comply with a pendente lite order.
The record indicates the following. The wife filed a complaint for a divorce on January 19, 2015, and, at the same time, she requested pendente lite child support. On March 19, 2015, the husband filed his *1117 answer and a motion seeking the entry of the court's "standing pendente lite order," as well as a request for a pendente lite hearing seeking enforcement of the standing pendente lite order. A hearing was held on April 9, 2015, and the next day the trial court entered a pendente lite order awarding the parties joint legal custody of the child and the wife sole physical custody of the child subject to the husband's standard visitation. The parties were directed to provide the trial court with income information pursuant to Rule 32, Ala. R. Jud. Admin., so that the court could determine child support. The trial court also entered the standing pendente lite order that the husband had requested. Among other things, the standing order directed the parties to preserve their assets. The parties complied with the request to provide income information, and on April 28, 2015, the trial court amended the pendente lite order to direct the husband to pay the wife $1,660 on the first of each month, beginning in May 2015, as pendente lite child support.
On May 4, 2015, the wife filed a motion to hold the husband in contempt because he had paid only $1,303 in pendente lite support. On July 1, 2015, the wife filed a second contempt motion alleging that she had received the second child-support payment from the husband on June 30, 2015, and that that payment was for only $281.74. In her motion, the wife said that the husband had told her that the trial court had incorrectly calculated his child-support obligation. Before the trial was held, the wife filed two more contempt motions--one regarding the husband's failure to pay the required child support and the other alleging that the husband had removed the wife from his health-insurance policy in violation of the standing pendente lite order.
During the trial, the following evidence was adduced. The parties were married in December 2008. The child, a daughter who was seven years old at the time of the trial, was the only child born of the marriage. However, both the husband and the wife had older children from previous marriages. Both parties sought sole physical custody of the child. The husband testified that he was concerned about the child being injured in the wife's care. He said that, on three occasions, he had taken the child to the hospital for what he said were dislocated elbows. He presented photographs of the child with bruises and scrapes and said that the wife had explained away those injuries, saying the child was clumsy. The husband also testified about an occasion when the wife "smacked" the child because she was crying. He said that the child had never given him cause to even send her to her room, adding that the child had "been a very compliant child to me."
The husband's father, Donald Bedard, testified that the wife was a "fabulous, caring" mother and that he had no concerns about the child's well being in the wife's custody. He said that he had been to the wife's apartment where she had been living with the child since the parties' separation and that, at the wife's home, "there was no anxiety, happiness, no sadness." During the marriage, Donald Bedard said, the parties' home had "a bit of anxiety, walking on eggshells at times ... and fear." Donald Bedard acknowledged that he and other members of his family, including the husband's mother and siblings, did not have a relationship with the husband. Donald Bedard testified that the husband had told him he was not welcome in the husband's home.
The husband testified that he disciplined his older children by taking away a privilege or grounding them. However, the husband *1118 acknowledged that he had been charged with felony child abuse regarding one of those children. In his appellate brief, the husband says only that the charge had been nolle prossed. However, the record indicates that, during his testimony, the husband acknowledged that he had participated in a pretrial-intervention program through the auspices of the district attorney's office. The program required the husband to make a statement admitting guilt and to perform 100 hours of community service.
The wife testified that she and the child spend time together baking, gardening, sewing, swimming, playing with dolls, and "role playing." She also testified that the husband would not allow her to take the child to South Africa to visit the child's maternal grandfather when the maternal grandfather was dying. The wife testified that, in her opinion, she and the husband would be unable to co-parent the child. The husband testified that he did not know of a reason why the parties could not co-parent the child.
As to the parties' property, on December 12, 2008, before they married, the parties entered into an antenuptial agreement. Pursuant to the agreement, the husband and the wife were to maintain the separate estates with which they entered the marriage. A specific term of the agreement provided that the husband was to retain his house, where the parties lived during the marriage. However, the agreement further specified that there was an outstanding balance of $36,000 on a home-equity line of credit ("HELOC") secured by that house at the time the agreement was reached. The agreement provided that the husband "will pay [the wife] the amount of $18,000 less half the outstanding balance on the loan." No other terms or limitations regarding the payment of the $18,000 were included in the agreement.
The wife testified that, when she and the husband married, she sold the house that she had lived in during her previous marriage. She said that $14,346 out of the total proceeds she earned from the sale of that house were used "to help pay off" the $36,000 home-equity loan on the husband's house. That loan was paid in full in February 2010. However, in January 2015, shortly before the wife filed the divorce complaint on January 19, 2015, the husband made three withdrawals totaling $39,000 from the HELOC without the wife's knowledge. The husband testified that he made the withdrawals to pay the college expenses for one of his older children.
During the marriage, the parties acquired personal property for which the wife sought half the value. At trial, the wife submitted a list of those accumulated assets, which included her estimated value of each asset. In addition to some household items, the wife said, during the marriage the parties had acquired numerous vehicles, including a Ford F250 pickup truck, a fifth-wheel camper, two passenger vans, four motorcycles, two automobiles, a pontoon boat and trailer, two jet skis, two four-wheelers, and four dirt bikes. The wife estimated the total value of the vehicles and household items to be $42,300. The husband paid for most of the vehicles and items with cash, and the title to most of the vehicles was in his name only. The titles to the Ford F250 truck and the camper were in both the parties' names, and one of the motorcycles was in the wife's name. The evidence indicated that the husband sold some of the vehicles and the pontoon boat while the divorce action was pending.
As to the issues of contempt, the husband testified that he had removed the wife from his health-insurance policy in December 2015 even though that conduct was prohibited by the standing pendente *1119 lite order. The husband said that he had removed the wife from the policy at her request because, he said, the wife had told him she was obtaining health-insurance through her employer. The wife testified that the husband had told her that he was removing her from his health-insurance coverage in December 2015 because, she said, he had told her it was going to cost him an extra $100 each month. Accordingly, the wife said, she was required to purchase her own policy while the divorce action was pending.
The husband also testified that he did not pay the wife the amount of pendente lite child support the trial court had ordered because, he said, his attorney had told him "they had reached an agreement to pay $1,303" and that, subsequently, the wife had agreed for the husband to pay her "200-some-odd dollars" in subsequent months.
After the trial, the trial court entered a judgment that, among other things, awarded the wife sole physical custody of the child subject to the husband's visitation, ordered the husband to pay the wife $1,284 in monthly child support, and ordered the husband to pay the wife $18,000 pursuant to the antenuptial agreement and $21,150, representing half of the value of the vehicles and household items acquired during the marriage. Additionally, the trial court found the husband in contempt for (1) failing to pay the wife the correct amount of pendente lite child support and directed him to pay the wife $2,139 for unpaid child support; (2) removing the wife from his health-insurance policy and directed him to pay $4,576 for the amount the wife had paid to secure health-insurance from January 2016 through the date of the trial; and (3) selling items of personal property acquired during the marriage during the pendency of the divorce action, in violation of the standing pendente lite order. The trial court found that, as to the latter ground for contempt, the husband had committed at least three separate acts: selling the pontoon boat, the trailer, and the Ford F250 pickup truck. The husband was sentenced to 15 days in jail, but the sentence was suspended.
Both parties filed motions to alter, amend, or vacate the judgment. The trial court denied both motions, and the husband filed a timely notice of appeal.
On appeal, the husband maintains that the trial court erred in finding him in contempt for violating certain provisions of the standing pendente lite order ("the standing order") because, he says, the standing order was invalid. Specifically, the husband contends that "the standing pendente lite order was entered without notice to the husband" and without a Rule 65(b), Ala. R. Civ. P., certification. Therefore, he says, the standing order was invalid and could not support a finding of contempt.
The record dispels the premise on which the husband's argument is based. The husband filed a motion on March 19, 2015, the same day he filed his answer, asking the trial court to enter the standing order.
"The law is well settled that a party may not induce an error by the trial court and then attempt to win a reversal based on that error. 'A party may not predicate an argument for reversal on "invited error," that is, "error into which he has led or lulled the trial court." ' Atkins v. Lee, 603 So.2d 937, 945 (Ala. 1992) (quoting Dixie Highway Express, Inc. v. Southern Ry., 286 Ala. 646, 651, 244 So.2d 591, 595 (1971) ). 'That doctrine [of invited error] provides that a party may not complain of error into which he has led the court.' Ex parte King, 643 So.2d 1364, 1366 (Ala. 1993).
*1120 'A party cannot win a reversal on an error that party has invited the trial court to commit.' Neal v. Neal, 856 So.2d 766, 784 (Ala. 2002). See also Liberty Nat'l Life Ins. Co. v. Beasley, 466 So.2d 935, 937 (Ala. 1985) ; State Farm Mut. Auto. Ins. Co. v. Humphres, 293 Ala. 413, 418, 304 So.2d 573, 577 (1974)."
Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 808 (Ala. 2003). The husband requested the entry of the standing order; he cannot now claim that that order is invalid and that his failure to follow the standing order cannot be used as a basis for contempt.
The husband also argues that, even if the trial court could find him in contempt for violating the standing order, its calculation of the amount the husband owed the wife based on her need to procure health insurance during the pendency of the litigation was in error.
As to this issue, the trial court found that,
"[f]or the entire year of 2016, the [wife] paid $48 per week for her health insurance. For the year 2017, to the date of trial, she had been forced to incur an expense of $60 per week for her health insurance.... The Court finds that the [wife] was caused to incur charges in the amount of $4,576 for payment of her own health insurance from January of 2016 to the date of trial...."
The trial was held on July 31, 2017.
In his motion to alter, amend, or vacate, the husband stated that the amount of this award was not supported by the evidence, but he did not set forth the basis for his contention. Nonetheless, we conclude the husband has sufficiently raised the issue of the amount of the award to the wife to reimburse her for the amount she paid for health insurance during the relevant period so as to preserve the issue on appeal.
In his brief on appeal, the husband argues that, based on the trial court's findings, he owed $2,496 for the year 2016 ($48 x 52 = $2,496). January 1, 2017, through the trial date of July 31, 2017, is 30 weeks and 1 day. Therefore, the husband has calculated, he owed the wife $1,800 for the year 2017 ($60 x 30 = $1,800), for a total of $4,296. Using the trial court's own figures, the order requiring the husband to pay $4,576 is $280 more than the amount the wife actually paid for health-insurance coverage. We are unable to determine how the trial court reached its final calculation of $4,576. Accordingly, that portion of the judgment ordering the husband to pay the wife $4,576 to cover the cost of her health insurance is reversed, and the cause is remanded for the trial court to recalculate the amount owed based on the figures it set forth in its findings.
The husband also argues that the trial court erred in finding him in contempt for failing to pay the full $1,660 each month for pendente lite child support, as set forth in the amended pendente lite order entered on April 28, 2015. The husband argues that the amount of pendente lite support the trial court awarded was not in compliance with Rule 32, Ala. R. Jud. Admin.
"Ordinarily, on appeal from a final judgment of divorce, this court cannot review the merits of a pendente lite order. As we explained in Morgan v. Morgan, 183 So.3d 945, 966 (Ala. Civ. App. 2014) :
" 'A pendente lite order is replaced by the entry of a final judgment. Reid v. Reid, 897 So.2d 349, 355 (Ala. Civ. App. 2004) ("A pendente lite order is one entered during the pendency of litigation, and such an order is generally replaced by a final judgment."). Thus, a pendente lite order is not made final by the entry of a final *1121 judgment such that it may be appealed as a part of the final judgment. Rather, the review of a pendente lite support order "is by way of mandamus, inasmuch as it is not a final [judgment]." Sizemore v. Sizemore, 423 So.2d 239, 241 (Ala. Civ. App. 1982). See also Ashbee v. Ashbee, 431 So.2d 1312, 1313 (Ala. Civ. App. 1983) ("As to the wife's claim that alimony pendente lite should have been awarded, we note that the proper method of seeking appellate review of such an action on the part of the trial court is through a petition for a writ of mandamus.... Since this issue has been raised improperly, we are unable to consider it [in an appeal of a final divorce judgment].") (citing Sizemore v. Sizemore, supra). Accordingly, the husband may not raise issues pertaining to the propriety of the ... pendente lite support order in th[e] appeal of the final divorce judgment.' "
Person v. Person, 236 So.3d 90, 95 (Ala. Civ. App. 2017). Accordingly, the husband may not obtain review of the provisions of the April 28, 2015, amended pendente lite order in this appeal. See J.S. v. S.L., 244 So.3d 120 (Ala. Civ. App. 2017).
The husband next argues that the trial court erred by failing to enforce the antenuptial agreement as written. Specifically, the husband argues that the trial court erred in awarding the wife $18,000 pursuant to the HELOC provision of the agreement and awarding her an additional $21,150, representing half of the value of the personal property the parties had acquired during the course of the marriage.
The HELOC provision appears in that part of the antenuptial agreement stipulating that the husband would retain the house he owned before the marriage ("the house") if the parties divorced. The parties lived in the house during the course of the marriage. The agreement noted that, at the time it was executed, there was an outstanding balance of $36,000 on the HELOC, secured by the house, and that the husband "will pay [the wife] the amount of $18,00 less half the outstanding balance on the loan."
The husband asserts that, because at the time of the divorce the HELOC had an outstanding balance of $39,000, and half of that amount--$19,500--exceeded the $18,000 that was to be given to the wife, he owed the wife nothing under the HELOC provision. The wife asserts that the parties had paid the balance of the HELOC down to zero during the course of the marriage. She claims that, without her knowledge, in the weeks surrounding her filing of the divorce complaint, the husband withdrew $39,000 from the HELOC for his own use. In its judgment, the trial court found that the husband's withdrawal from the HELOC "occurred at the moment that the parties had begun experiencing extreme marital discord, as evidenced by the testimony of the parties. The Court finds that the [husband's] removal of these funds was done with the intent of depriving the [wife] of the amount due to her per the parties' antenuptial agreement." The trial court then awarded the wife $18,000.
Without expressing a reason or presenting a legal analysis, the husband maintains that the HELOC provision is not ambiguous and, therefore, that the trial court could not look beyond the agreement itself to determine how much the wife was to be awarded pursuant to that provision. In other words, he appears to argue--without supporting authority--that, because at the time the divorce complaint was filed the outstanding balance on the HELOC was $39,000, the trial court must use that amount as the starting point for determining the amount the wife is owed under the HELOC provision. The husband *1122 does not argue that the evidence does not support the trial court's interpretation of the antenuptial agreement. "When an appellant fails to argue an issue in its brief, that issue is waived." Boshell v. Keith, 418 So.2d 89, 92 (Ala. 1982).
" '[I]n Alabama, when the terms of a contract are unambiguous, the contract's construction and legal effect become a question of law for the court, and when appropriate may be decided by summary judgment. Jehle-Slauson Constr. Co. v. Hood-Rich, Architects and Consulting Engineers, 435 So.2d 716, 720 (Ala. 1983) (citations omitted). However, when the terms of a contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact for the [fact-finder]. Hall v. Integon Life Ins. Co., 454 So.2d 1338 (Ala. 1984). Whether a contract is ambiguous is a question of law for the court. Hartford [Accident & Indem. Co. v. Morgan Cnty. Ass'n of Volunteer Firefighters, 454 So.2d 960 (Ala. 1984) ].' "
Ocean Reef Developers II, LLC v. Maddox, 96 So.3d 870, 872-73 (Ala. Civ. App. 2012) (quoting Colonial Bank of Alabama v. Coker, 482 So.2d 286, 291 (Ala. 1985) ).
The undisputed evidence indicates that, at the time the agreement was executed, the existing home-equity loan had an "outstanding balance of $36,000." During the marriage, the loan referenced in the HELOC provision was paid in full; there was no longer an outstanding balance on the loan. The agreement is silent as to the treatment of any future withdrawals that may have been made on the HELOC after the initial balance was repaid. Based on the husband's argument and the record before us, we cannot say that, as a matter of law, the trial court erred in determining that, under the HELOC provision, the wife was to be paid the full $18,000 promised to her in the antenuptial agreement.
The husband also argues that the trial court erred in awarding the wife $21,150, representing half of the value of the items of personal property the parties had acquired during the marriage. Without citing any authority, the husband contends that at least some of that property "should be considered [his] separate estate under the antenuptial agreement and therefore not subject to division."
"This Court will not 'create legal arguments for a party based on undelineated general propositions unsupported by authority or argument.' Spradlin v. Spradlin, 601 So.2d 76, 79 (Ala. 1992). Further, it is well settled that ' "[w]here an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court's duty nor its function to perform all the legal research for an appellant." ' Spradlin v. Birmingham Airport Auth., 613 So.2d 347, 348 (Ala. 1993) (quoting Sea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212, 216 (Ala. 1990) )."
Allsopp v. Bolding, 86 So.3d 952, 960 (Ala. 2011).
The husband failed to make a legal argument supported by authority to demonstrate that items the parties acquired during the course of the marriage should have been part of his separate estate. Because his argument does not comply with Rule 28(a)(10), Ala. R. App. P., we will not consider it. Travelers Indem. Co. of Connecticut v. Worthington, 252 So.3d 645 (Ala. 2017).
Furthermore, the husband asserts that the trial court's valuation of the property at issue is unsupported by the evidence. The record indicates that the personal property at issue was identified *1123 on a list that was admitted without objection during the trial. The wife included her estimation of the value of each item of property on the list. The wife also submitted evidence, again without objection, of the amounts of money she provided to the husband toward the purchase of several items of the listed personal property. The husband did not challenge the values during his examination of the wife at trial.
" 'The [ore tenus] rule applies to "disputed issues of fact," whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala. 1995). The ore tenus standard of review, succinctly stated, is as follows:
" ' "[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence." '
" Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala. 2000) (quoting Raidt v. Crane, 342 So.2d 358, 360 (Ala. 1977) )."
Spencer v. Spencer, 258 So.3d 326, 327-28 (Ala. 2018).
The record refutes the husband's contention that the trial court's award of $21,150 to the wife, representing half of the value of personal property acquired during the marriage, is arbitrary and not supported by the evidence. Accordingly, we will not hold the trial court in error as to this issue.
The husband next argues that the trial court erred in failing to award the parties joint physical custody of the child. In making his argument, the husband correctly notes that it is the policy of this state "to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage" and that joint physical custody is to be considered in every case. § 30-3-150, Ala. Code 1975. He argues that the evidence in this case demonstrates that joint physical custody should have been awarded in this case.
"When the trial court makes an initial custody determination, neither party is entitled to a presumption in his or her favor, and the 'best interest of the child' standard will generally apply. Nye v. Nye, 785 So.2d 1147 (Ala. Civ. App. 2000) ; see also Ex parte Byars, 794 So.2d 345 (Ala. 2001). In making an initial award of custody based on the best interests of the children, a trial court may consider factors such as the ' "characteristics of those seeking custody, including age, character, stability, mental and physical health ... [and] the interpersonal relationship between each child and each parent." ' Graham v. Graham, 640 So.2d 963, 964 (Ala. Civ. App. 1994) (quoting Ex parte Devine, 398 So.2d 686, 696-97 (Ala. 1981) ).... Other factors the trial court may consider in making a custody determination include 'the sex and age of the [children], as well as each parent's ability to provide for the [children's] educational, emotional, material, moral, and social needs.' Tims v. Tims, 519 So.2d 558, 559 (Ala. Civ. App. 1987). The overall focus of the trial court's decision is the best interests and welfare of the children."
Steed v. Steed, 877 So.2d 602, 604 (Ala. Civ. App. 2003).
Furthermore, when evidence is presented ore tenus, the trial court is " 'unique[ly] position[ed] to directly observe *1124 the witnesses and to assess their demeanor and credibility.' " Ex parte T.V., 971 So.2d 1, 4 (Ala. 2007) (quoting Ex parte Fann, 810 So.2d 631, 633 (Ala. 2001) ). Therefore, a presumption of correctness attaches to a trial court's factual findings premised on ore tenus evidence. Ex parte J.E., 1 So.3d 1002, 1008 (Ala. 2008).
The record demonstrates that, as to both parties, the evidence regarding parental involvement and capabilities was not fully developed. The wife testified that she and the child, a daughter who was seven years old at the time of the trial, engaged in activities together. The husband presented evidence suggesting that the wife had physically abused the child because the child had suffered scrapes and bruises and her elbows had been dislocated on at least two occasions. The husband had admitted to the district attorney's office that he had physically abused one of his older children, and he had served 100 hours of community service for the offense.
The wife testified that, in her opinion, she and the husband would not be able to co-parent the child. The husband said that he did not see a reason why they would not be able to do so. The trial judge, who was able to observe the parties and how they communicated and interacted with each other, was free to believe the wife's opinion. Based on the record before us and the standard of review we must apply in this context, we cannot conclude that the trial court's judgment awarding the wife primary physical custody of the child was not in the child's best interest or was otherwise in error. The husband has failed to demonstrate a basis for reversal as to this issue.
Finally, the husband maintains that the trial court erred in calculating his child-support obligation. In the judgment, the trial court ordered the husband to pay $1,284 each month in child support. The judgment stated that the amount was calculated in accordance with the child-support guidelines in Rule 32, Ala. R. Jud. Admin.
In his appellate brief, the husband states that the trial court failed to enter a child-support-guidelines form, Form CS-42, as required by Rule 32(E), Ala. R. Jud. Admin. He then asserts that the trial court's calculation was in error, but he fails to advise this court of how the calculation is incorrect or what he believes the proper calculation should be.
"This court has stated:
" 'In reaching its child-support determination, the trial court also did not incorporate the required forms into its judgment. See Rule 32(E), Ala. R. Jud. Admin. The record does not contain a CS-42 form setting forth the method by which the trial court determined child support, and using the figures set forth in the CS-41 forms submitted by the parties does not result in the child-support determination reached by the trial court. We note that this court may affirm a child-support award if such forms are not contained in the record when the court is able to determine, from the evidence in the record, how the trial court reached its child-support calculation. Hayes v. Hayes, 949 So.2d 150, 154-55 (Ala. Civ. App. 2006).'
" Griffin v. Griffin, 159 So.3d 67, 72 (Ala. Civ. App. 2014). In this case, the record does not contain a CS-42 Child-Support Guidelines form or a CS-41 income affidavit prepared by the father. As in Griffin,
" 'this court is unable to determine from the evidence in the record the figures the trial court used in reaching its child-support determination. The trial court's failure to incorporate into *1125 its judgment the required child-support forms leaves this court unable to review the mother's argument on appeal. Accordingly, we reverse the judgment as to this issue and remand the case for the trial court to enter a child-support judgment that complies with Rule 32, Ala. R. Jud. Admin. C.M.M. v. S.F., 975 So.2d 975, 982 (Ala. Civ. App. 2007) ; Wilkerson v. Waldrop, 895 So.2d 347, 348-49 (Ala. Civ. App. 2004).'
" 159 So.3d at 72. Accordingly, we must reverse that portion of the judgment modifying the father's child-support obligation and remand the case for the trial court to comply with Rule 32, Ala. R. Jud. Admin."
Farquhar v. Farquhar, 190 So.3d 524, 525-26 (Ala. Civ. App. 2015).
In this case, both parties submitted a Form CS-41, a child-support-income affidavit, in compliance with Rule 32(E), Ala. R. Jud. Admin. Applying the information contained in those forms to the Rule 32 child-support guidelines, this court does not reach the same result as the trial court. Because the trial court did not incorporate a Form CS-42 calculating child support, we are unable to review the husband's argument that the trial court's calculation is incorrect. Therefore, as in Farquhar and Griffin v. Griffin, 159 So.3d 67 (Ala. Civ. App. 2014), we must reverse the judgment as to the issue of child support and remand the case for the trial court to comply with the requirements of Rule 32, Ala. R. Jud. Admin.
For the reasons set forth above, those portions of the trial court's judgment awarding the wife an amount to cover the cost of her health insurance and determining the husband's child-support obligation are reversed. The cause is remanded for the trial court to make the appropriate calculations in determining the health-insurance award and to comply with Rule 32, Ala. R. Jud. Admin., in determining child support. The remainder of the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Pittman, Thomas, and Moore, JJ., concur.
Donaldson, J., concurs in part and concurs in the result in part, with writing.
DONALDSON, Judge, concurring in part and concurring in the result in part.
I concur with all portions of the main opinion except the portion addressing the arguments of Michael J. Bedard ("the husband") regarding the awards to Sharon Bedard involving matters addressed by the parties' antenuptial agreement -- specifically, the awards relating to the home-equity line of credit and the personal property acquired during the marriage. In my opinion, the husband sufficiently presents and supports his arguments in his brief seeking to reverse those awards; however, because I believe the awards are due to be affirmed on the merits, I concur in the result reached on those issues.